RAILWAY COMPANY *v.* BOLLING.

Opinion delivered July 14, 1894.

*Negligence—Master's liability for servant's acts.*

> A child of tender years cannot recover from a railroad company
> for injuries received by him while riding on a hand car, caused
> by the negligence of its employees who were propelling the
> car, if the company's rules forbade such employees to take any
> one on the hand car except an employee, and there was no cus-
> tom to permit persons to ride on the hand car shown to have
> been known to or acquiesced in by the officials of the company.

Appeal from Drew Circuit Court.

CARROLL D. WOOD, Judge.

Action by Bolling against the Houston, Central
Arkansas & Northern Railway Company. The facts
are stated by the court as follows:

The appellee, a boy about four years old, while rid-
ing on a hand car of appellant, had his hand crushed in
the cogs by which it was operated, and for the injury
recovered damages in this action in the sum of five thous-
and dollars, to reverse the judgment for which the
appeal in this case was taken.

The facts in the case are substantially as follows:
Parkdale is the center of a section of defendant's rail-
way, in Ashley county, Arkansas. The section was
about six miles long, and Parkdale was situated about
the center. At Parkdale was located the railway com-
pany's section house, at which the laborers and foreman
resided. On March 29, 1892, one Bolling was foreman
of that section (No. 6), and had charge of all the work
thereon. He lived at the section house at Parkdale,
with his wife and child, Falls Bolling, who was at that
time about four years old, and who is the real plaintiff
in this suit. On March 29, 1892, section foreman Bol-
ling was very ill, and one Mike O'Connor, one of the reg-

ular section hands, was presumably acting as temporary foreman. The duties of these section hands were to keep the track of their section 'in repair, and do all things necessary to that end. Their working hours were from 7 o'clock a. m. to 6 o'clock p. m. each day, and, except in an emergency, the foreman and laborers were not required to be on the track outside of these hours.

In order to enable this section crew to do its work, all the tools necessary were furnished them by the railway company, and among these tools was a hand car. This hand car was furnished them for the express purpose of transporting the section laborers, with the tools, implements and materials, to and from the several places on the line of road within the section, wherever needed, and for no other purpose. Indeed, the rules and regulations of the defendant railway company forbade the section foreman, or any one of the section men, allowing any one to ride on the hand car except the laborers on the section. They were forbidden to use the hand car except in their work, and the proof shows that the hand car was never intended, nor was it ever used, for the transportation of passengers. On the contrary, the use of the hand car was for this purpose positively and affirmatively prohibited. The section foreman and his men had absolutely nothing to do with the transportation of passengers. On the contrary, they were forbidden to do such work, or to carry passengers on the hand car, or in any manner. The proof was clear and undisputed that section foreman Bolling had knowledge of these rules, and that he had repeatedly imparted his knowledge to O'Connor and his crew.

On March 29, 1892, the section hands came in early from work, between 5 and 6 o'clock, at the express orders of Bolling, for the purpose of taking two ladies on the hand car up to Mr. Kinnebrew's residence, which

was about a quarter of a mile beyond the end of the
section, and off of section 6. Kinnebrew was very ill.
His wife desired Mrs. Meyer to come and sit up with
her. Mrs. Meyer had asked Mrs. Maxwell to go with
her, and Mrs. Maxwell had consented. So, in order to
get to Kinnebrew's, these ladies asked either Mr. Bol-
ling, or his wife, or both, to let the section men carry
them up to that point on the hand car. Mr. Bolling
consented, and ordered the men to come in early from
work, and carry the ladies to Kinnebrew's. One of the
section men testified: "We were employed on that sec-
tion No. 6, and it was the duty of the hands on that
section to see every part of the road on that section every
day. When we got ready to start over the north end of
the section, on said March 29, 1892, Falls Bolling, a
child about 4 years old, began to cry and wanted to go
with us."

At 5:20 p. m. the section men quit work, and came
in to the section house. On their arrival, Mrs. Bolling,
who knew the purpose for which they had come in so
early, sent word to the ladies that the men had come,
and would take them at once. In the mean time Falls
Bolling, the child of Mrs. and Mr. Bolling, and plaintiff
in this case, was standing near the hand car, crying to
take a ride on it. Mike O'Connor, who, the testimony
shows, was much attached to the child, and made a pet
of it, asked its mother to let it go with them on the hand
car, and Mrs. Bolling consented, saying, "Take good
care of my boy, and bring him back safe." To this
O'Connor replied, apparently in a joking manner, "Yes,
we will bring him back safe, or we will bring him back
a corpse." Upon this reply being made, Mrs. Bolling
then told the men "to leave her boy alone, and not to
take him." The men made no reply to this, but simply
laughed. As to whether or not this conversation
actually took place the proof was contradictory.

After this conversation, Mrs. Meyer and Mrs. Maxwell (or about that time) arrived, and got upon the hand car, the plaintiff being taken charge of by Mrs. Maxwell, who held him in her arms while riding on the hand car up to Mr. Kinnebrew's. After Mrs. Maxwell, Mrs. Meyer, the plaintiff, Falls Bolling, and the crew had got themselves upon the hand car, they then proceeded up the road, a distance of about three and one-half miles, to Kinnebrew's, and, on arriving there, the ladies got off the car, O'Connor going with them up to the house. After sitting for a while in social conversation with the ladies, O'Connor returned to the hand car, and started back to the section house. On its way back it overtook one Grant Johnson, a negro man, walking along the track. The hand crew, in the goodness of their hearts, stopped it and took Johnson aboard. Up to this time the child, Falls Bolling, had been riding on the front of the car, and was safe and sound. But shortly after Johnson had boarded the car the little fellow commenced to grow sleepy, and began to nod. O'Conner and the crew observed this, and fearing the child might fall off the front of the car, O'Connor moved him back from the front to the side, close to the standards where the cog-wheels work. The car continued on its journey, but shortly thereafter the boy fell asleep, and in some unexplainable manner got his hand caught in the cog-wheel and crushed.

In the court below it was contended by appellant that Mike O'Connor and his section men were acting wholly and entirely without the scope of their employment when they undertook to carry these ladies, the plaintiff, or the colored man upon the hand car; that it was not a part of defendant's duty to carry passengers, either for hire or for pleasure, upon hand cars; that such means for the transportation of passengers was unknown to defendant's system of business; that it was

contrary to the usual mode of doing businss upon this, as well as other, railroads; that the rules and regulations of the railway company forbade it; that no employee had authority, power or right to involve the defendant in such a manner. Defendant further contended, and evidence was introduced to show, that the printed rules and regulations of the defendant company positively forbade the section foreman, or any and all of his section hands, from using the hand cars in their possession for any other purpose than doing work upon the road.

*Dodge & Johnson* for appellant.

1. There was no liability whatever upon the part of the company. It was not the duty of defendant's employees to carry plaintiff upon the hand car; their acts in so doing were voluntary, outside the scope of their employment and authority, and against the rules of the company. The verdict is contrary to the law, and there is no evidence whatever to show liability by the company. 13 S. W. 983; 149 Mass. 205; 153 *id.* 191; 111 N. Y. 328; 125 Ill. 320; 56 N. W. 346: "The liability of the master does not reach wrongs caused by carelessness of servants in work not directed by the master, *as business of a third party*, or of the servant himself, or of the master which he did not expressly direct him to perform. The rule, briefly stated, is: The responsibility of the master grows out of, is measured by, and begins and ends with, his control of the servant." 63 Mich. 644. The above propositions are crystalized and laid down as a fixed rule by such authorities as: 1 Pars. Cont. 102; Cooley, Torts, 533; 1 Add. Torts, sec. 550, note 1; 2 Hill. Torts, 432; Story, Agency, sec. 452; Smith, Mas. & S. 322; 19 Wend. 343. See, also, 70 Me. 65; 51 Conn. 150; 82 Ill. 429; 49 Ark. 360; 43 Mo. App. 410; 125 Ill. 320; 98

Tex. 713; 77 *id.* 56; 42 La. 302; 45 Ark. 250; 47 *id.*
502; 49 *id.* 264.   To render the master liable for the act
of the servant, the servant must be at the time employed
in the business of the master.   If the servant be pur-
suing an independent purpose of his own, which is no
part of the service due by him to the master, the master
will not be liable for the servant's act, although he may
be using instrumentalities belonging to the master, with
or without the master's consent.   The mere fact that
the master may give permission to the servant to use the
master's conveyance in the prosecution of some business
of the servant will not render the master liable for the
act of the servant in the course of such business.
Whart. Neg. secs. 157, 162, 168; Whitt. Smith, Neg.
p. 154 note, pp. 156, 162–3; 2 Thomps. Neg. p. 885; 3
Will. Civ. Cases, 177; 116 Mass. 265; 26 Pa. St. 482;
4 Daly, 338; 31 Minn. 351; 45 Conn. 44; 71 Me. 432; 4
Q. B. 476; 2 L. R. C. P. Div. 357.   Though the servant
be at the time in the general course of his employment,
yet if the particular act complained of is not a part of
the duty which the servant is employed to perform, and
has not been authorized by the master, the latter is not
liable.   Whart. Neg. sec. 177; 67 N. Y. 382; 22 Barb.
91; 69 Pa. St. 210; 91 *id.* 458; 92 *id.* 21; 86 *id.* 418; 3
Harr. (Del.) 411; 40 Ark. 323; 83 Ill. 427; 9 Exch. 302,
and cases *supra*.   The affirmative evidence of appellant,
showing that the superior officers of the section foreman
had no notice, information or knowledge of the violation
of the rule forbidding the carriage of third parties on
the hand car, and there being no evidence to the contrary,
and such violation not being of such nature as to make it
known to such superior officers, and there being nothing
in the character of a hand car, or the work which a
section foreman was employed to perform, to induce
people to believe that it was intended by appellant for
the carriage of passengers, especially to points beyond

the section to which it belonged, the mere fact of such disregard of the rule by the section foreman is not sufficient to show that the rule had been waived by the company, or that the foreman had authority to carry the plaintiff. 64 Tex. 144; 66 *id* 619; 57 N. Y. 382; 22 Barb. 91.

2. The court should have directed the jury to find for defendant. 21 S. W. 1062; Wood, Mast. & Serv. secs. 285-6, and pp. 555-6.

*Wells & Williamson* and *Dan W. Jones & McCain* for appellee.

1. It is gross contributory negligence, and a violation of the business rules of the company, for a *grown person or adult* to ride on a hand car. This is a sufficient answer to *all* the hand car cases cited by appellant's counsel. They have no application here. A mere child cannot be guilty of negligence, and the negligence of the mother can not be imputed to him. The doctrine of imputed negligence has been entirely exploded. Bish. on Non-Cont. Law, 582; 50 A. & E. R. Cases, 464; 52 N. J. Law, 446; Chase on Torts, 231; 21 L. R. A. 76. In 50 Ark. 480 it was held two causes of action arise for injury to a child. The mother's negligence did not bar the child. We do not claim that the child was a passenger; he was riding *in invitum;* his case was the ordinary one of a person injured by a dangerous piece of machinery, where the injury is caused by the negligence of those in charge. 17 Wall. 657; 48 A. & E. R. Cases, 532-5. In 77 Tex. 228, relied on by appellant, the men operating the hand were going on an errand *exclusively their own.* They were not on business for the railroad. In that class of cases, it may be conceded the company is not liable. In this case the men were engaged in their regular line of duty.

2. It is insisted that the foreman was violating his instructions. If this was a test, a principal would seldom be liable. The true test is laid down in 1 Blackst. Com. book 1, page 431: "The damage must be done while he (the servant) is actually employed in the master's service." 14 How. 468. The rule of *respondeat superior* is of universal application, whether the act be one of omission or commission, if it be done in the course of his employment. 9 Car. & P. 607; 15 Ark. 118; 132 U. S. 518; 42 Ark. 553; Cooley on Torts, sec. 538; 28 Atl. 29; 107 Mass. 108; Wood on Master & Serv. sec. 283, *et seq.;* Hutch. on Car. secs. 535 and 814; Walker's Am. Law. p. 260, sec. 117; 39 Ark. 17; 2 Am. & Eng. Enc. Law, p. 753-4, sec. 23 and notes.

HUGHES, J., (after stating the facts.) In *Flower* v. *Pennsylvania Railroad Company*, 69 Pa. St. 210, the facts were as follows: "A train of defendant's coming into the city, the engine, tender and one car were detached from the remainder, and run, under the charge of the fireman in the engineer's place, to a water-station belonging to the defendants. At the station, the fireman asked a boy ten years old, standing there, to turn on the water; while he was climbing the tender to put in the hose, the remainder of the train came down with their ordinary force, struck the car attached to the engine, the jar threw the boy under the wheels, and he was killed." In action by the parents for his death, it was held that, it not being in the scope of the engineer's or fireman's employment to ask any one to come on the engine, the defendants were not liable; that the boy, in climbing on the tender at the request of the fireman, did not come within the protection of the defendants, and they therefore owed no duty to him. The appeal in this case was before Justices Agnew, Sharswood and Williams. Judge Agnew delivered the opinion of the court. He said: "Whether the boy could be treated as

a mere trespasser is scarcely the question. His youth might possibly excuse concurrent negligence, where there is clear negligence on the part of the company. The true point of this case is that, in climbing the side of the tender or engine, at the request of the fireman, to perform the fireman's duty, the son of the plaintiffs did not come within the protection of the company. To recover, the company must have come under a duty to him, which made his protection necessary. * * * Nor can the mere youth of the boy change the relations of the case. That might excuse him from concurring negligence, but cannot supply the place of negligence on the part of the company, or confer an authority on one who has none. It may excite our sympathy, but cannot create rights or duties which have no other foundation."

In *Eaton* v. *Delaware, etc. R. Co.* 57 N. Y. 382, it is said that railroad companies have the right to make a complete separation between their freight and passenger business. When this is done, the conductor of a freight train has such general authority only as is incidental to the business of moving freight, and no power whatever as to the transportation of passengers ; and notice of this limited authority will be implied from the natural and apparent divisions of the business. "In the great transactions of commercial corporations, convenience requires a sub-division of their operations among many different agents. Each of these may have a distinct employment, and become a general agent in his particular department, with no powers beyond it," p. 389.

In *Stone* v. *Hills*, 45 Conn. 47, it is said: "The rule is that for all acts done by a servant in obedience to the express orders or directions of the master, or in the execution of the master's business, within the scope of his employment, and for acts in any sense warranted by the express authority conferred upon him, considering the nature of the services required, the instructions

given, and the circumstances under which the act is done, the master is responsible; for acts which are not in these conditions, the servant alone is responsible."

In *Storey* v. *Ashton*, Cockburn C. J. said: "We cannot adopt the view of Erskine J. in *Sleath* v. *Wilson*,[1] that it is because the master has intrusted the servant with the control of the horse and cart that the master is responsible. The true rule is that the master is only responsible so long as the servant can be said to be doing the act, in the doing of which he is guilty of negligence, in the course of his employment as servant." L. R. 4 Q. B. 476. "Thus, it will be seen that, in the absence of express orders to do an act, in order to render the master liable, the act must not only be one that pertains to the business, but must also be fairly within the scope of the authority conferred by the employment." Wood's Law of Master and Servant, 546.

In the case at bar the section foreman was not only not authorized, expressly or by implication, to permit persons to ride on the hand car, but had been expressly forbidden by the rules of the company and otherwise to permit it, and there was no custom to permit persons to ride on the hand car shown to have been known to, or acquiesced in by the officers of the railroad company. "In order that the corporation should be made responsible by reason of such a custom, it was necessary to show that it was actually known to the officials who conducted its business, or that it was so general and of such long continuance that it must be fairly inferred that it was known and assented to by them." *Powers* v. *Boston, etc. Rd.*, 153 Mass. 191. Such is not shown to have been the case here. The court deems it needless to set out or discuss the instructions. The court is therefore of the opinion that there is a total failure in

---

1. 9 C. & P. 607, 612.

this case of evidence to show any liability upon the part of the railroad company. Wherefore the judgment is reversed, and the cause is dismissed.

Wood, J., being disqualified, did not participate in the determination of this cause.