THOMAS *v.* MAGNOLIA PETROLEUM COMPANY.

Opinion delivered July 9, 1928.

*D. T. Cotton, Watkins & Pate* and *Trimble & Trimble,* for appellant.

*Cockrill & Armistead,* for appellee.

SMITH, J. Appellant filed a complaint in which he alleged that U. R. Lindsey owned a truck, which was driven by his son, Dale Lindsey, in the delivery of the different articles sold by the Magnolia Petroleum Company, hereinafter referred to as the company. The tank on the truck in which gasoline was contained and delivered was owned by the company. Dale Lindsey drove a load of gasoline belonging to the company from the town of Marshall to the town of Leslie, and, after making the delivery of the gasoline, he invited appellant and a number of other boys to ride on the truck to a picnic which was on his return route to the town of Marshall, and a short distance out of the town of Leslie. The invitation was accepted, and Dale Lindsey started on his return trip, and, in doing so, he drove his truck "at an unlawful rate of speed and in a manner so negligent, wanton, reckless and careless of the lives of all of his passengers that, out of the town of Leslie about two miles, as he approached a bridge across a stream, he failed to cross said bridge, but drove his truck off of said bridge, and the same fell some twelve or fifteen feet to the bottom of the stream, which was solid rock," and severely injured appellant, who brought this suit to recover damages to compensate his injury.

Lindsey and his son and the company were all made defendants, but a demurrer filed by the company was sustained as to it, and the cause of action against the company was dismissed, and this appeal is from that judgment.

The question presented is whether a cause of action was stated against the company. The authorities on this subject are numerous and in direct conflict.

The case chiefly relied upon by appellant as supporting his contention that a cause of action was stated is that of *Higbee Co.* v. *Jackson,* 101 Ohio St. 175, 128 N. E. 61, 14 A. L. R. 131. This was an opinion by the

Supreme Court of Ohio, and the first syllabus reads as follows: "Where an employee, to whom the owner has committed the operation of an auto truck in the owner's business, permits an infant to ride on the truck, in violation of his instructions, and the infant is injured by the wanton and willful conduct of the employee, while in the course and in the scope of his employment, the owner is responsible."

There was a very vigorous dissenting opinion in this case by Justice Jones, who characterized the majority opinion as "supported neither by sound legal reason nor by judicial authority in other States." The dissenting Justice reviewed many cases, and, concerning the syllabus quoted, had this to say:

"That the rule of principal and agent is involved in this case is recognized by the syllabus, which establishes liability for 'conduct of the employee while in the course and within the scope of his employment.' However, the syllabus begs the entire question when it declares that here the wanton conduct of the employee was done within the scope of his employment. If the acts of the employee were 'in the course and within the scope of his employment,' then his principal would be liable, whether his acts constituted wanton or 'mere' negligence. This principle is elementary."

The case of *Zampella* v. *Fitzhenry*, 97 N. J. L. 517, 117 Atl. 711, 24 A. L. R. 666, reviews the development of the doctrine *respondeat superior* from the time of William the Conqueror, and is a learned and interesting opinion. It was there held by the New Jersey Court of Errors and Appeals that "the driver of an automobile truck has no implied authority from his employer to invite children to ride on it, and therefore the employer is not liable, in the absence of express authorization of the act, for injury to a child thrown from the truck when riding by the driver's invitation."

There is an extended annotator's note to the case last cited, collecting many cases on the subject, and the briefs of opposing counsel cite these and other cases.

We attempt no review of these cases, as we have announced the principles in former decisions of this court which are controlling here.

In the case of *Railway Co.* v. *Bolling,* 59 Ark. 395, 27 S. W. 492, the syllabus reads as follows:

"A child of tender years cannot recover from a railroad company for injuries received by him while riding on a hand-car, caused by the negligence of its employees who were propelling the car, if the company's rules forbade such employees to take any one on the hand-car except an employee, and there was no custom to permit persons to ride on the hand-car shown to have been known to or acquiesced in by the officials of the company."

In the case of *Little Rock Traction & Electric Co.* v. *Nelson,* 66 Ark. 494, 52 S. W. 7, it was held that a boy ten years of age, riding upon a street car without paying fare, by invitation of a motorman in charge of the same, who had authority to receive and let off passengers, was not a trespasser. The motorman had no authority to admit passengers except upon the payment of fare, but he did have authority to "receive and let off passengers," and the court said: "The invitation of the motorman (to ride) is an act within the general scope of his employment, for which he is responsible to his master. If the boy accepts it innocently, he is no trespasser, and it is the duty of the company to extend to him the diligence due to passengers of his age and discretion" (Citing cases).

The case of *American Ry. Ex. Co.* v. *Mackley,* 148 Ark. 227, 230 S. W. 598, cites many cases of this court dealing with the liability of the master for the unauthorized torts of the servant committed during the course of his employment, and it was there said that "the doctrine of all these cases is that the test of the master's liability is, not whether a given act is done during the existence of the servant's employment, but whether it was committed in the prosecution of the master's business."

In the note to § 1214, Berry on Automobiles (5th ed.), 901, many cases are cited which discuss the "scope of employment" of a chauffeur or driver of another's car. The author there says: "The master is not liable for his servant's acts if, at the time of the acts complained of, he has become *ad hoc* the servant of another, and engaged in the business of that other, and under his direction and control. Nor does it follow that a chauffeur is acting within the scope of his employment merely because he is operating his master's automobile at the time of an accident."

In the case of *Keller* v. *White,* 173 Ark. 885, 293 S. W. 1017, a recovery was sought against the Pierce Petroleum Corporation upon the ground that plaintiff's intestate had been killed through the negligence of the corporation's employee while driving an automobile owned by the corporation. It was there said:

"Our analysis of the testimony has convinced us, however, that the court should have given a peremptory instruction in favor of the Pierce Petroleum Corporation, because the undisputed evidence showed that the trip from Eudora to Lake Village was not taken in performance of White's duties for said corporation or for its benefit, even if there were sufficient evidence to make the issue of his agency one for the jury. It is quite clear that White, Buchanan and H. T. Keller were on a trip to satisfy their own appetites rather than upon a mission for the benefit of the corporation in a business way. White was not acting within the scope of his authority as agent of the company or in the performance of his duties for it and for its benefit" (Citing cases).

Appellant cites and relies upon the case of *Campbell Baking Co.* v. *Clark,* 175 Ark. 889, 1 S. W. (2d.) 35, in which an agent, driving a truck over a route for the purpose of delivering and selling merchandise, in returning to the principal's place of business towed an automobile to his own car, which, as it passed through a filling station at the intersection of two streets, skidded and struck the

plaintiff's car and damaged it, and injured the plaintiff. The master was held liable, although the agent had exceeded his authority in towing the car, because he had not abandoned his principal's business, that is, returning the truck to the principal's place of business was an act within the scope of the servant's employment, and he negligently discharged his employment by towing the car.

So here, if Lindsey, while driving appellant, had struck another car, his principal would have been liable for that act if it had been negligently done, because driving the truck on his return was within the scope of his employment; but permitting appellant to become the guest or the passenger of the driver was an unauthorized act which was beyond the scope of the servant's employment. We said in the Campbell case that, although an agent may exceed his authority to the extent even of violating instructions, if, at the time the servant injures another, he is engaged in the business he was employed to perform, his employer is responsible for injuries resulting from his torts; but this is true because the servant is acting within the scope of his employment.

Had the owner of the automobile which was being towed in the Campbell case sued for the damages to it, we would have had the question here presented, but such was not the case. In such a case it would, no doubt, have been held that the driver of the truck had become *ad hoc* the servant of the owner of the automobile, as he had gone beyond the scope of his employment in attaching the automobile to his truck; but that fact did not relieve the servant's principal from liability for the damage done to the automobile of a third party while driving the truck in a negligent manner in pursuit of the servant's employment.

Appellant also cites and relies upon the case of *Bennett* v. *Bell*, 176 Ark. 690, 3 S. W. (2d), 696, in which it was said:

"The driver of an automobile or motor vehicle is bound to the exercise of ordinary care in the operation thereof for the safe transportation of his guests and

other passengers and to avoid personal injury to them, and this duty extends to all such passengers, whether guests by sufferance, invited, or self-invited.''

That case, however, was a suit against the owner of a car who drove it himself. Here the demurrer which was sustained by the court does not affect the appellant's right to sue the driver of the truck in which he was riding when injured.

We quote the *syllabi* of a few late cases.

''The owner of an automobile delivery truck *held* not liable for injuries to a child eight years old, who fell off while riding by the permission or at the invitation of the chauffeur, without the owner's knowledge or consent, and without necessity therefor.'' *Barker* v. *Dairymen's Milk Products Co.*, 205 Ala. 470, 88 Sou. 588.

''Where ordinary truck driver invited or permitted a third person to ride on the truck, such third person assumed whatever risk there was in riding on the truck and whatever risk that might arise from his alighting and leaving the truck, and could not recover from the master by reason of such driver's conduct in negligently starting the truck before he was off, such third person being a trespasser, even though a boy 14 years of age.'' *Hughes* v. *Murdoch Storage & Transfer Co.*, 269 Pa. 222, 112 Atl. 111.

''The driver of a delivery truck, employed to make deliveries of goods, acts outside of the scope of his employment where he, for companionship and for his own pleasure, and without the knowledge of his employer, invites a friend to ride on the truck with him, and the employer is not liable for injuries to the guest of the driver, sustained from the negligence of the latter, even though the negligence be willful and wanton.'' *Morris* v. *Fruit Co.*, 32 Ga. App. 788, 124 S. E. 807.

''The driver of an automobile truck used by a mercantile company in deliveries invited a lady acquaintance to ride on the step, and in the course of the ride she was injured. The driver had no authority to invite persons to ride on the truck. *Held*, that in such case he was

not acting within the scope of his employment, and his master, the company, was not liable; for a servant, to be acting within the scope of his employment, must be engaged in doing some act under authority from his master." *McQueen* v. *People's Store Co.,* 97 Wash. 387, 166 Pac. 626.

"Where truck driver had no authority to transport guests, he was not, in any part of his conduct towards a guest riding on the truck, acting within scope of his authority, and the guest could not recover for his wanton, willful and reckless misconduct in driving the truck." *O'Leary* v. *Fash,* 245 Mass. 123, 140 N. E. 282.

The *syllabi* in the cases of *Tate* v. *Atlantic Ice & Coal Corporation,* 25 Ga. App. 797, 104 S. E. 913, and *Waller* v. *Southern Ice & Coal Co.,* 144 Ga. 695, 87 S. E. 888, are to the same effect.

We conclude therefore that the demurrer was properly sustained as to the company, for the reason that, under the allegations of the complaint, Lindsey was not acting within the scope of his employment in permitting appellant to ride on the truck.

The judgment will therefore be affirmed, and it is so ordered.