ALEXANDER A. McCALLUM *vs.* ALEXANDER McCALLUM.

Argued July 10, 1894.　Affirmed July 19, 1894.

No. 8785.

**Evidence examined.**

> The evidence considered, and *held* not sufficient to sustain a verdict for plaintiff.

. Appeal by plaintiff, Alexander A. McCallum, from an order of the District Court of Hennepin County, *Henry G. Hicks,* J., made February 12, 1894, denying his motion for a new trial.

*Larrabee & Gammons,* for appellant.

*Keith, Evans, Thompson & Fairchild,* for respondent.

CANTY, J.　The plaintiff is a licensed engineer, and his business is also pile-driving and bridge-building.　In August, 1893, he was in the employ of his uncle, the defendant, as foreman of a crew of ten men engaged in pile-driving.　The motive power was steam; the boiler being an upright one, standing about twelve feet high above the platform upon which it rested.

Two of this crew of ten men under plaintiff were a fireman and engineer who ran the engine.

Some five or six days before the 3d day of August, plaintiff moved the plant to the place in question, and set it up ready for use.　He had the boiler fired up, and discovered that steam escaped or blew off from the safety valve at a pressure of forty five pounds, as indicated by the steam gauge.　Upon striking or jarring the gauge, it immediately registered ninety five pounds, being the amount of pressure at which the safety valve was set to blow off, which showed that the steam gauge was stuck; that it failed to work so as to register correctly the amount of pressure in the boiler.　The next day the plaintiff informed the defendant that the steam gauge was out of order, and he said he would have it fixed.

The safety valve was attached to the feed pipe on the top of the boiler.　One of the exhaust pipes conducted the steam into the smokestack.　The other exhaust pipe was so constructed as to permit the steam to escape into the open air above the boiler. During the forenoon of August 3d, they were unable to get power

enough to run the pile driver continuously, and were obliged to stop at times to get up steam. Plaintiff concluded that there was not sufficient draft to the fire, and after dinner ordered the fireman to place two planks from a ladder standing near the boiler to the top of the boiler, which the fireman did. Plaintiff then went upon these planks, over onto the top of the boiler, to see if he could turn the second exhaust pipe into the smokestack, for the purpose of increasing the draft. The smokestack was in the center of the boiler, and he stooped down, and looked to see where he could cut a hole in the smokestack, to put in the other exhaust pipe. Then the steam suddenly escaped from the safety valve into his face, and blew him off, and he fell down upon the platform below, striking some projection as he fell, and broke his ankle, and he was otherwise injured.

Just before he went up, and upon the boiler, he looked at the steam gauge, and it indicated only sixty five pounds pressure; and the pressure could not have risen from that to ninety five pounds in the short time that intervened before the steam blew off and he was injured.

The exhaust pipe was not out of repair, but he desired to change its construction, and he undertook to do this, or to examine it for this purpose, while the boiler had in it, to his knowledge, at least sixty five pounds of pressure. Neither was the safety valve out of repair. He claims that he was deceived by the false indicating of the steam gauge, and was thereby induced to go upon the boiler. He supposed that the steam gauge had been fixed before he went upon the boiler, but he had no reason so to suppose, except from the lapse of time since the defendant had promised to fix it.

These are substantially the facts as proved by plaintiff when, on the trial, he rested his case in the court below. On motion of defendant the action was then dismissed, on the ground that the facts proved did not constitute a cause of action; and, from an order denying a motion for a new trial, plaintiff appeals.

We are of the opinion that the order appealed from should be affirmed. We will not consider what effect the fact that he himself was foreman, and had charge of the business, has on the case, or whether or not he had a right to assume that the steam gauge had been repaired.

The steam gauge, though out of order, was not a dangerous appliance, in itself. As long as the safety valve was in good repair and properly adjusted, the defective condition of the steam gauge did not cause the boiler, engine, or other appliances to become dangerous, except to a person who got in the way of the steam when it was about to blow off at the safety valve.

If the steam was likely thus to blow off at a place where the employés were accustomed to go when the steam was up, or in a place where the master, in the exercise of reasonable care, should have known that his servants were likely to go at such a time, and that it was necessary to keep the steam gauge in repair to warn them of the danger of going there when the steam was up, the case might be different. But it does not appear from the evidence that this was a place where an employé was ever likely to go when the steam was up. It would naturally be expected that any alteration in the pipes or appliances on top of the boiler would be made when the boiler was cold. It seems to us that it must be held, as a question of law, that a man of ordinary care would not have anticipated any accident to his employés by reason of the blowing off of the steam from this safety valve up beside the smokestack on the top of a boiler ten or twelve feet high above the ground, or the platform on which the engineer and fireman were accustomed to work.

The order appealed from should be affirmed. So ordered.

BUCK, J., absent, took no part.

(Opinion published 59 N. W. 1019.)