WILLIAM H. SMITH *vs.* JOHN PEACH.

Suffolk.   December 7, 1908. — January 6, 1909.

Present : KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Negligence,* Employer's liability, Proximate cause.   *Agency,* Scope of employment.

It is not within the scope of the employment of the foreman of a teaming business to demonstrate in the stable to one of the employees the working of a gun which belonged to the foreman and which earlier in the day he had loaned to the proprietor of the teaming business for him to use in shooting a cat which had been stealing pigeons from the stable, and if, while the foreman is so demonstrating the working of the gun, it goes off and injures another employee, the proprietor of the stable is not liable for the negligence of the foreman.

If the proprietor of a teaming business, who has borrowed from his foreman a magazine gun loaded with more than one cartridge for the purpose of shooting a cat that had been stealing pigeons from his stable, leaves the gun in his office with a charge in it after he has used it, and the owner of the gun enters the office and takes the gun and, while he is demonstrating the gun's workings to a fellow employee, it goes off and injures another fellow employee, the injury to such employee cannot be said to have been caused by negligence on the part of the proprietor.

TORT for injuries received by the plaintiff while in the employ of the defendant, the proprietor of a teaming business, and alleged to have been caused by negligence of the defendant in caring for, or of his foreman in handling, a gun in the defendant's stable in Chelsea. Writ in the Superior Court for the county of Suffolk dated November 24, 1905.

At the trial before *Bell*, J., the foreman, Wiley, who also was the defendant's grandson, testified that on the morning of the accident he had brought the gun to the stable with him, intending to take it to Cape Cod for duck shooting; that the defendant asked him to leave the gun with a loaded shell in the office, as the defendant "desired to shoot at a cat that was stealing pigeons from the barn"; that he left one shell with the defendant and placed the gun, unloaded, behind the desk in the office; that later in the day he talked with the defendant on the telephone and the defendant told him he had used the gun during the day and had shot the cat; that, returning to the stable in the evening, he picked up the gun to take it apart so as to take it away; that it had nothing but an empty shell in it; that he was showing it to one Johnson, a fellow employee, and had placed a loaded shell in it and had snapped the lock so as to eject the empty shell, and that, while he was doing so, his thumb, which was wet, slipped from the trigger and the loaded shell exploded, and the plaintiff was shot.

Johnson testified that Wiley showed him the gun and told him what kind of a gun it was; that Wiley "snapped the breach up and that threw the empty shell out and then snapped it up again and I couldn't say then what did happen, but heard the gun go off"; that he was in a position to see if Wiley put any shell in the gun, but that he did not see him do so; that he did not have to, as the witness understood that the gun "was one of those loaded from a magazine"; that, on the way to the hospital with him and the plaintiff, Wiley had said to him that he "didn't realize there was another shell in there loaded."

The presiding judge directed a verdict for the defendant, and the plaintiff alleged an exception.

*J. E. McConnell*, (*D. J. Maloney* with him,) for the plaintiff.

*H. A. Eyges*, for the defendant, was not called upon.

BRALEY, J. The plaintiff before he can recover must establish either that the defendant's foreman in discharging the gun acted within the scope of his employment, or that the defendant himself was negligent in leaving the loaded gun in his office. Upon the evidence neither proposition can be maintained. The defendant, who kept a livery stable, employed the owner of the gun as his foreman and driver, by whom, while exhibiting

the gun. to a friend, the cartridge was exploded. Beyond this general statement, and the fact that he gave orders to the teamsters, nothing further is stated as to the foreman's duties. It is manifest, that the defendant neither kept nor used the gun as an instrument in the prosecution of his business, and the act of the foreman in taking it apart was outside of any service either directly or incidentally connected with his employment. He was engaged in handling his property as an affair of his own. *Obertoni* v. *Boston & Maine Railroad*, 186 Mass. 481, 483, and cases cited. *Berry* v. *Boston Elevated Railway*, 188 Mass. 536. *Collins* v. *Wise*, 190 Mass. 206.

If, through the defendant's failure to take proper precautions to-guard against a danger which he ought to have foreseen, the gun, while on the defendant's premises and in his custody, had been taken and accidently discharged by an intermeddler to the injury of the plaintiff, who was lawfully in the stable as an employee, a different question would be presented. *Lane* v. *Atlantic Works*, 107 Mass. 104. *Lebourdais* v. *Vitrified Wheel Co.* 194 Mass. 341, 344, and cases cited. It is true, that at his request the magazine gun had been left for the defendant's use, and, when the owner resumed possession after having been informed by him that it had been used for the purpose for which it had been borrowed, he very likely assumed that the cartridge had been exploded. But even then, the efficient cause of the plaintiff's injury was not the remote neglect, if any, of the defendant seasonably to give this information that the gun still remained charged, but the act of the owner, who was the wrongdoer, in deliberately taking the gun apart without first ascertaining whether it was in the same condition as when lent. *McDonald* v. *Snelling*, 14 Allen, 290. *Carter* v. *Towne*, 103 Mass. 507. *Glassey* v. *Worcester Consolidated Street Railway*, 185 Mass. 315. *Lebourdais* v. *Vitrified Wheel Co.*, *ubi supra*.

*Exceptions overruled.*