## CARL LARSON v. DULUTH, MISSABE & NORTHERN RAILWAY COMPANY.[1]

May 16, 1919.

No. 21,023.

**Master and servant — safe place to work.**

1. The duty to furnish a reasonably safe place in which to work requires the master to take proper precautions to guard against those dangers which ordinary sagacity and foresight ought to anticipate as likely to attend the performance of the work, but does not require him to guard against unforeseeable dangers.

**Same — notice of presence of explosive.**

2. The owner of premises on which a dangerous explosive is found is not liable for resulting injuries, unless chargeable with notice of the existence and presence of the explosive.

**Same — railway's liability under Act of 1915.**

3. Chapter 187, Laws of 1915, imposes on a steam railway company liability for injury to an employee caused by the negligence of a fellow servant while acting in the course and within the scope of his employment, although the injury did not result from a "railroad hazard."

**Same — defendant not liable for act of "gang boss."**

4. Defendant had a crew engaged in removing a platform at one of its stations. A member of the crew found a revolver in a leather case which had been hidden under the platform by some unknown person and handed it to one Mayer, the "gang boss." Mayer attempted to break it open and in the attempt discharged it, wounding plaintiff, another employee. *Held* that Mayer while manipulating the revolver was not engaged in furthering defendant's business, and that defendant is not liable for the consequences of such manipulation.

Action in the district court for St. Louis county to recover $2,000 general damages, $200 special damages on account of loss of earning capacity and $100 for surgical and medical treatment, for injuries sustained while in defendant's employ. The answer alleged that whatsoever injury plaintiff received was due to his own negligence, and that the risks and

[1]Reported in 172 N. W. 762.

dangers which he encountered at the time of the accident were such as he assumed. The case was tried before Cant, J., who when defendant rested denied its motion for a directed verdict, and a jury which returned a verdict for $700. Defendant's motion for judgment notwithstanding the verdict was denied. From the judgment entered pursuant to the verdict, defendant appealed. Reversed and judgment entered for defendant.

*Abbott, MacPherran & Gilbert,* for appellant.

The constitutionality of the fellow-servant act (G. S. 1913, § 4427), has been upheld on the ground that it was applicable only to injuries resulting from the *hazards peculiar to railway operation* and therefore was not special legislation in violation of Const. art. 4, § 33. Lavallee v. St. Paul, M. & M. Ry. Co. 40 Minn. 249, 251, 41 N. W. 974; Johnson v. St. Paul & D. R. Co. 43 Minn. 222, 45 N. W. 156; Pearson v. Chicago, M. & St. P. Ry. Co. 47 Minn. 9, 10, 49 N. W. 302. No reason appears why Laws 1915, p. 253, c. 187, can be held constitutional under the Minnesota Constitution, unless limited in exactly the same way. Other jurisdictions have imposed similar limitations upon statutes of similar nature. Deppe v. Chicago, R. I. & P. R. Co. 36 Iowa, 52, 55; Slaats v. Chicago, M. & St. P. Ry. Co. 149 Iowa, 735, 740, 129 N. W. 63, 7 L.R.A. (N.S.) 129, Ann. Cas. 1912D, 642; Missouri, K. & T. Ry. Co. v. Medaris, 60 Kan. 151, 152, 55 Pac. 875; Beleal v. Northern Pac. R. Co. 15 N. D. 318, 108 N. W. 33, 11 Ann. Cas. 921; Indianapolis T. & T. Co. v. Kinney, 171 Ind. 612, 617, 85 N. E. 954, 23 L.R.A. (N.S.) 711. Without upsetting the long line of decisions in Minnesota, chapter 187, p. 253, Laws 1915, cannot be held to apply to employees engaged in lines of duty other than those affected by the peculiar railroad hazard. The Federal Constitution is not involved. It is the constitutionality of the act under the Minnesota Constitution that is involved. Construed to cover all railroad employees, irrespective of the hazard, would the act be distinctly class legislation or would it not? We earnestly submit that it would be. If this act is to be held valid without limitation, what is to prevent the enactment of another law of the same kind applicable to iron mining companies alone, and not including copper or coal mines; then another covering wholesale hardware companies, and eliminating wholesale grocers, and so on down the list, so that at all times employees of different

industries would not get equal rights and privileges under the law, determinable only upon the business the employer may be in.

*John Jenswold* and *John D. Jenswold,* for respondent.

The legislature took Laws 1915, p. 253, c. 187, from the 1908 Federal Liability Act, the North Dakota Fellow-Servant Act and others similar to those mentioned. These had received a settled judicial construction both by our own court and the highest court of the land as being applicable to all railroad employees. Mondou v. New York, N. H. & H. R. Co. 223 U. S. 1, 32 Sup. Ct. 169, 56 L. ed. 327, 38 L.R.A.(N.S.) 44: Majavis v. Great Northern Ry. Co. 121 Minn. 431, 141 N. W. 806. Where the legislature of one state enacts a provision taken from the statute of another state or country in which the language of the act has received a settled judicial construction they are presumed to have intended it should be understood and applied according to that construction. Nicollet Nat. Bank v. City Bank, 38 Minn. 85, 35 N. W. 577. We may presume that in adopting this statute the legislature was influenced by these decisions and others. At the same session the legislature passed Laws 1915, p. 258, c. 193, amending G. S. 1913, § 8202, defining the application of the Workmen's Compensation Act by excepting "any common carrier by steam railroad." Prior to the amendment carriers doing a strictly intrastate business were subject to the act. Chapters 193 and 187 both became effective April 20, 1915. Both originated in the House. Both relate to the same subject matter.

Where two laws are passed at the same session of the legislature and concerning the same subject matter, they should be construed and taken together in order to determine the legislative intent and the construction to be placed on them. In re Hall, 38 Kan. 670, 17 Pac. 649; Blackwell v. First Nat. Bank, 10 N. M. 555, 63 Pac. 43; Hess v. Trigg, 8 Okla. 286, 57 Pac. 159. Prior to these two statutes any class of employees of a railroad doing strictly an intrastate business, such as office employees, were subject to the Compensation Act. Since the amendment of 1915 they are taken out of the act. At the same time we claim they were placed under the protection of chapter 187. This is the only reasonable conclusion that can be drawn. If they were not put under chapter 187, why were they removed from the Compensation Act?

Prior to 1915, where the injury occurred in interstate commerce the

employee was subject to the Federal act. Where the employer was an interstate carrier, but the injury occurred in intrastate commerce, and where the employee was subject to the peculiar hazards of railroading, under the Lavallee case the employee was subject to the Fellow Servant Act, and, if not subject to those peculiar hazards, the common law governed. Lastly where the carrier was strictly and solely an intrastate carrier the employee must seek his rights under the Compensation Act. The object of the legislature was clearly to clarify and remove this complex condition, this minute classification without reason, by substituting only two cases where four previously existed. They must be taken as having intended that where the injury occurred in interstate commerce so as to come under the Federal act, that should govern, but with that exception all employees of steam railroads in this state should come under chapter 187. The instant statute is not, as was its predecessor, a statute simply removing the defense of contributory negligence. It is a complete scheme of liability for injury, and contains all the provisions of the Federal act.

TAYLOR, C.

Defendant's bridge and building department had a crew, of which plaintiff was a member, making preparations to remove an old station building from its original location in the western part of the city of Duluth to another point on its railway line. The work of the bridge and building department on this portion of the line was in charge of a foreman who hired and discharged the men, assigned them to various crews and appointed the work to be performed by each crew. This crew was under a so-called "gang boss," named Mayer, to whom the foreman gave his instructions concerning the work and who had charge of the operative details in performing it.

Plaintiff and a fellow workman, named Sholund, were engaged in removing the plank platform adjoining the station building. When they took up one of the planks, Sholund discovered a revolver in a leather case which had been hidden on top of one of the sills under the platform. It was covered with dust and rust, indicating that it had been there a long time. Sholund picked up the revolver, drew it out of the case, remarked that he had found a revolver, and handed it to Mayer. Mayer

attempted to break it open to see if it was loaded and in some unknown way discharged it. The bullet struck plaintiff. Thereafter plaintiff brought suit against defendant for the injuries inflicted. The case has been tried twice. At the first trial the jury disagreed; at the second they returned a verdict for plaintiff. Defendant made a motion for judgment notwithstanding the verdict and, this being denied, appealed from the judgment thereafter entered.

In support of the verdict, plaintiff claims that defendant failed in its duty to furnish him a reasonably safe place in which to work, for the reason that the presence of the revolver rendered the place unsafe. Conceding, for the purpose of the argument, that the presence of the revolver rendered the place unsafe, yet the admitted facts show that there is no ground upon which to predicate negligence on the part of defendant in failing to anticipate or guard against such danger. The duty to furnish a reasonably safe place in which to work required the master to take proper precautions to guard against those dangers which ordinary sagacity and foresight ought to anticipate as likely to attend the performance of the work, but does not require him to guard against unforeseeable dangers. Cook v. St. Paul, M. & M. Ry. Co. 34 Minn. 45, 24 N. W. 311; Freeberg v. St. Paul Plow-Works, 48 Minn. 99, 50 N. W. 1026; McCallum v. McCallum, 58 Minn. 288, 59 N. W. 1019; Murphy v. Great Northern Ry. Co. 68 Minn. 526, 71 N. W. 662; Beard v. Chicago, M. & St. P. Ry. Co. 134 Minn. 162, 158 N. W. 815, L.R.A. 1916F, 866. It is conceded that defendant had no knowledge of the existence of the revolver until its discovery by Sholund, and nothing is shown or claimed from which defendant in the exercise of even the highest degree of care and foresight could have surmised that a firearm was on its premises or likely to be found in the progress of the work.

Plaintiff also seeks to charge defendant with liability under the doctrine which requires a person who has the control of dangerous explosives, or permits them to be upon his premises, to exercise a degree of care in guarding against injury to others commensurate with the danger to be apprehended. But this doctrine applies only where the person sought to be held responsible for resulting injuries is chargeable with notice of the existence and presence of the explosive, and has no application to the present case.

The evidence is sufficient to sustain a finding that Mayer was negligent, and the important question is whether defendant is responsible for Mayer's negligence. Mayer and plaintiff were fellow servants. Chapter 187, p. 253, Laws of 1915 provides, among other things:

"That every company, person or corporation owning or operating, as a common carrier or otherwise, a steam railroad or railway in the State of Minnesota, shall be liable in damages to any employee suffering injury while engaged in such employment * * * resulting in whole or in part from the negligence of any of the officers, agents or employees of such employer."

This statute was before the court in Seamer v. Great Northern Ry. Co. infra, page 376, 172 N. W. 765, and after full and careful consideration it was held that the statute of 1915 changed the former rule in this state, and imposed on the railway company liability for injury to an employee caused by the negligence of a coemployee, although the injury did not result from a "railroad hazard." It follows that, although Mayer was a fellow servant of plaintiff instead of a vice principal, that fact does not relieve defendant from liability, if Mayer was acting in the course and within the scope of his employment. If Mayer at the time was engaged in his employer's business and the negligent act was committed as an incident of his efforts to further such business, defendant is liable, but if he had stepped aside from the business of his employer and was temporarily engaged in doing something outside that business, defendant is not liable. Morier v. St. Paul, M. & M. Ry. Co. 31 Minn. 351, 17 N. W. 952, 47 Am. Rep. 793; Sunderland v. Northern Express Co. 133 Minn. 158, 157 N. W. 1085, L.R.A. 1916E, 1151.

In Smith v. Peach, 200 Mass. 504, 86 N. E. 908, plaintiff, an employee in defendant's livery stable, was injured by the negligent discharge of a gun in the stable by defendant's foreman. The foreman intending to go duck shooting brought the gun to the stable in the morning and placed it in the office. Defendant borrowed the gun, and, after using it, replaced it in the office and informed the foreman that he had done so. Later in the day the foreman, while showing the gun to another employee, accidentally discharged it, injuring plaintiff. The court say:

"The plaintiff, before he can recover, must establish either that the

defendant's foreman in discharging the gun acted within the scope of his employment, or that the defendant himself was negligent in leaving the loaded gun in his office. Upon the evidence neither proposition can be maintained. * * * It is manifest that the defendant neither kept nor used the gun as an instrument in the prosecution of his business, and the act of the foreman in taking it apart was outside of any service either directly or incidentally connected with his employment. He was engaged in handling his property as an affair of his own."

In Burns v. Texas Midland R. R. (Tex. Civ. App.) 167 S. W. 264, defendant kept a revolver in an unlocked drawer in its station office While the men in charge of the office were absent, a boy in the employ of defendant took the revolver from the drawer and snapped it, wounding another boy. The court held that "the act of Watson (the boy) in shooting the plaintiff, was committed in reckless sport and not in the furtherance of any business of the defendant," and that defendant was not liable therefor.

In Davis v. Houghtellin, 33 Neb. 582, 50 N. W. 765, 14 L.R.A. 737, defendants, engaged in the business of feeding stock, employed one Allen Ireland to guard their supply of feed and arrest persons found disturbing it. Ireland shot one Daniel Davis who came upon the premises for a lawful purpose. In holding that the petition failed to state a cause of action for damages, the court say:

"The sufficiency of the petition therefor depends upon whether it charges that the act of killing Davis was done in the prosecution of defendant's business, and within the range of the servant's employment. * * * So far as the allegations in the petition are concerned, or the legitimate inferences to be drawn therefrom, Ireland's employment was exclusively in guarding and protecting the feed and the wrong charged was something which his agency did not contemplate, and which he could not lawfully do in the name of the defendants. His business no more contemplated the seizure of a person who was upon the defendant's premises for a lawful purpose than it did the arrest and detention of a person lawfully passing along the public highway near the property. And in neither case would the defendants be liable for the act. The test of a master's liability is not whether a given act was done during the existence of the servant's employment, but whether it was committed in

the prosecution of the master's business." To the same effect is Golden v. Newbrand, 52 Iowa, 59, 2 N. W. 537.

In Lipscomb v. Houston & T. C. Ry. Co. 95 Tex. 5, 55 L.R.A. 869, 93 Am. St. 804, defendant's station had been entered several times and goods stolen therefrom and defendant armed an employee named Gatlin, and had him sleep in the station at night to catch the burglars. In the night the engineer of a freight train, whose engine had become out of order so that he was unable to proceed, went to the station to report, and finding it locked went to a window and made a noise which awakened Gatlin, who seeing him at the window mistook him for a burglar and shot him. The Texas statute imposed liability on defendant for the negligence of its employees. Defendant contended that the act of Gatlin was wilful and intentional. The court say:

"The rule of respondeat superior * * * does not make the responsibility of the master depend on the question whether an injury inflicted by the servant was wilful and intentional or unintentional but upon the question whether the servant, when he did the wrong, acted in the prosecution of the master's business, and within the scope of his authority, or had stepped aside from that business and done an individual wrong."

The court held the defendant liable on the ground that Gatlin's act was "a negligent exercise of the authority derived from his master."

In Holler v. Ross, 68 N. J. Law, 324, 53 Atl. 472, 59 L.R.A. 943, 96 Am. St. 546, the defendant had some personal property on a wharf on which other persons also had personal property. Defendant employed a servant to watch his property. Without defendant's knowledge or consent, the servant armed himself with a shotgun, and in the evening fired at and wounded the plaintiff who had landed upon the wharf from a boat. The court, after observing that the servant was employed to watch the property and that his act was not "within the line of his duty under his employment," say:

"Beyond the scope of his employment the servant is as much a stranger to the master as any third person, and his act in that case cannot be regarded as the act of the master. * * * The shooting by the servant of the defendant was not, under the proof made by the plaintiff, shown

to have been done while the servant was acting within the line of his duty or employment, and a nonsuit should have been granted."

In Haack v. Fearing, 5 Robt. (N. Y.) 528, the plaintiff was injured by the firing of a cannon on a yacht by the sailing master left in charge of the vessel. Robertson, C. J. said:

"I have not been able to find any evidence in this case that the gun, whose discharge caused the injury to the plaintiff, was fired in the course of any employment or duty of the master of the vessel in question," and affirmed the nonsuit.

In Haehl v. The Wabash R. Co. 119 Mo. 325, 24 S. W. 737, one Hill, employed by defendant to watch a bridge and keep trespassers therefrom, shot plaintiff's intestate. The court held the defendant liable, on the ground that Hill was engaged in the performance of his duty when he fired the shot, but gave the following fair and lucid statement of the principle governing such cases:

"The principle of respondeat superior applies only when what is complained of was done in the course of the employment. The principal is responsible, not because the servant has acted in his name or under color of his employment, but because the servant was actually engaged in and about his business and carrying out his purposes. He is then responsible, because the thing complained of, although done through the agency of another, was done by himself; and it matters not in such cases whether the injury with which it is sought to charge him is the result of negligence, unskillful or of wrongful conduct, for he must choose fit agents for the transaction of his business. But if his business is done, or is taking care of itself, and his servant not being engaged in it, not concerned about it, but impelled by motives that are wholly personal to himself, and simply to gratify his own feeling of resentment, whether provoked or unprovoked, commits an assault upon another, when that has, and can have, no tendency to promote any purpose in which the principal is interested, and to promote which the servant was employed then the wrong is the purely personal wrong of the servant for which he, and he alone, is responsible."

St. Louis, I. M. & S. Ry. Co. v. Hackett, 58 Ark. 381, 24 S. W. 881, 41 Am. St. 105, somewhat similar to the Missouri case, applies a similar rule and reaches a similar result.

In the instant case defendant did not own or control the revolver, and had no previous knowledge of its presence on the premises. It was wholly foreign to any business in which defendant's crew were engaged. To remove it from the premises was the utmost that the proper prosecution of defendant's undertaking required. While it remained in its case it was harmless and could have been removed without danger to anyone. The danger arose solely from handling and manipulating it. While handling and manipulating it, Mayer was not engaged in furthering any business of defendant, but had stepped aside from that business and was engaged in an affair personal to himself which had no connection therewith. Our conclusion is that he was not acting within the scope of his employment and that defendant is not liable for his act. The judgment is reversed and judgment will be entered for defendant.

DIBELL, J. (dissenting).

In my judgment the evidence made it at the least a question for the jury whether the gang boss, when he took the gun and made an examination to ascertain if it were loaded, was acting within the scope of his employment. The evidence did not require a finding that he stepped aside from his work idly or from curiosity or to serve a personal purpose; and the jury might find that his act was in furtherance of the business of the defendant. Something had to be done with the gun by someone. It was natural that an examination be made. It was natural that the gang boss make it. Something of this kind was to be expected. If the jury found that the gang boss was acting within the scope of his employment when he took the gun and made the examination to ascertain whether it was loaded, and that he was negligent in the manner of making it, a verdict for the plaintiff was right. This is so, not because there rested upon the defendant a nondelegable duty to furnish a reasonably safe place of work, nor because it was bound to anticipate a situation such as developed in the course of the railroad operation, but it is so because the statute of 1915, which is applicable, makes a railroad employer, though without personal fault, liable to one employee for the negligence

of a coemployee engaged in the scope of his employment in the common work. In my judgment the verdict should be sustained.

HALLAM, J. (dissenting).
I agree with Justice Dibell.