## WILLIAM KOSTAS v. JAMES C. DAVIS.[1]

May 18, 1923.

No. 23,235.

Railroad not liable for injury caused by discharge of shotgun upon motored push car.

The plaintiff, a section hand on a railroad, was injured by the discharge of a gun, which was carried on the motor-car, as the crew was returning to the station house at the close of the day. The gun was owned by one of the crew. It was used by the plaintiff and others in shooting game. The game was used by the members of the crew

[1]Reported in 193 N. W. 693.

who bought their provisions and boarded themselves. The ammunition was paid out of the common fund which bought the provisions. The gun was not used for any purpose of the railroad or in forwarding its interests. Its use was personal to the men. In using it the men were without the scope of their employment and the plaintiff cannot recover.

Action in the district court for St. Louis county to recover $20,000 for injuries received 'by the discharge of a shotgun. The case was tried before Magney, J., who when plaintiff rested and at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $5,000. From an order granting defendant's motion for judgment notwithstanding the verdict, plaintiff appealed. Affirmed.

*George Sfetsos* and *McCoy & Hansen*, for appellant.

*M. L. Countryman* and *Baldwin, Baldwin, Holmes & Mayall*, for respondent.

DIBELL, J.

Action by the plaintiff to recover for injuries sustained through the discharge of a shotgun while he was working on the tracks of the Great Northern Railway Company. There was a verdict for the plaintiff for $5,000. The court granted defendant's motion for judgment notwithstanding the verdict. The plaintiff appeals.

The plaintiff was a section hand working with a crew on the Great Northern tracks near Mason, North Dakota. As the crew was returning from work on the evening of October 14, 1919, the gun was discharged and the plaintiff was injured.

The men lived at the section house, bought their provisions, and boarded themselves, each in turn doing the cooking. One of the men owned a shotgun. It was carried on the car to and from work when occasion suggested. The car was the ordinary pushcar equipped by the foreman with a motor to save work in propelling. The foremen were permitted to equip the cars in this way. The motor was a second-hand one, apparently defective and not in good condition, and the car shook as it was about to stop. The gun was used by members of the crew in hunting during the rest hour, or on

Sundays, and sometimes by the foreman in work hours. The men shot game which they added to their provisions. They paid for the ammunition from the common fund just as they paid for provisions.

The plaintiff worked on the section for several months while the gun was in use. He came to this country in 1907 from Greece, his native country, returned there in 1912 and served in the Greek army, returning to this country in 1914. He was familiar with firearms. While at work on the section he procured a hunting license from the North Dakota authorities. His personal connection with the gun is not uncertain. The cause of its discharge is not directly shown. It may be inferred that the shaking of the car, as it slowed down, was the cause. The company had no use for the gun. It was not used in its business nor to forward its interests. It was used for the pleasure and incidental advantage of the men. The trial court succinctly stated the situation thus:

"The shotgun was not used or intended to be used by the foreman and the men in the furtherance of their master's business while performing their duties for the railroad company. It was carried on the handcar for the shooting of game. The foreman and the men, including the plaintiff, boarded themselves and shared alike the cost of the provisions; and the game which was secured by means of this shotgun in question belonged to all the men, including the plaintiff, and supplied their common larder. The carrying of the gun for the purpose of securing game for their common table may be termed a joint enterprise in which the plaintiff shared equally with the foreman and the other men. The duties and work of the section men did not require them to carry a gun. The carrying of the gun was personal to the plaintiff and to the other men."

There is no theory upon which the plaintiff can sustain a recovery. The use of the gun was without the scope of the employment of the men.

We do not mean that there are not situations where an employer is liable to his employes for allowing firearms to be about the place where they work, or to employes or third persons for injuries resulting from the negligent use of firearms in the hands of employes, or

negligently left about their premises. Here the employes took it upon themselves to have the gun with them for their own purposes. There was nothing in the situation that required the railway to see that they did not have a gun. The case of Chicago, R. I. & P. Ry. Co. v. Smith, 10 Kan. App. 162, 63 Pac. 294, is partially in point. The following cases may be noted: Larson v. Duluth, M. & N. Ry. Co. 142 Minn. 366, 172 N. W. 762; Bowen v. Illinois Cent. R. Co. 136 Fed. 306, 69 C. C. A. 444, 70 L. R. A. 915; Smith v. Peach, 200 Mass. 504, 86 N. E. 908; St. Louis & S. F. R. Co. v. Rie, 110 Ark. 495, 163 S. W. 149; American Ry. Exp. Co. v. Davis, 152 Ark. 258, 238 S. W. 50, 1063. In the Larson and Bowen cases a number of authorities are collected.

Order affirmed.