St. Louis & San Francisco Railroad Company *v.* Rie.

Opinion delivered December 15, 1913.

1. Master and Servant—Duty to Furnish Safe Place to Work—Tools.—A master is bound to use ordinary care to furnish his servant safe and suitable tools, and a safe place in which to work, and a master may entrust the duty of providing safe tools and conditions to a particular employee. (Page 501.)

2. Master and Servant—Injury to Servant—Negligence—Question for Jury.—When a railway section foreman permitted a loaded gun to be placed among the tools on a hand-car, at a time when the section crew would be likely to be called upon to use the hand-car without knowing that the gun was there, and, while in the performance of his duties, a section man was injured by a discharge of the gun, it is a question for the jury to say, under all the circumstances, whether this was negligence for which the railway company would be liable. (Page 502.)

3. Negligence—Ordinary Care—Question for Jury.—In an action for damages for personal injuries due to defendant's negligence, where there is room for an honest difference of opinion among intelligent men as to whether the conduct of the defendant was that of an ordinarily prudent person, in view of all the facts and circumstances surrounding him, the question of negligence is one for the jury, although the facts are undisputed. (Page 503.)

4. Master and Servant—Injury to Servant—Duty to Inspect for Dangers.—There is no duty resting on a section foreman to examine a hand-car to see if there is a loaded gun, or other dangerous agency thereon, when he did not anticipate the presence of any such agency. (Page 503.)

Appeal from Jackson Circuit Court; *R. E. Jeffery,* Judge; reversed.

*W. F. Evans* and *W. J. Orr,* for appellant; *Stuckey & Stuckey,* of counsel.

1. Under the undisputed testimony no legal liability on the part of appellant is shown. 63 Pac. 294; 162 Mass. 319, and cases cited; 93 Ark. 387; 99 S. W. (Ark.) 693.

2. The court erred in permitting counsel for appellee to make a closing argument, after he had made an opening argument to the jury, and appellant's counsel offered, without argument, to submit the case on the evidence, instructions and the argument of appellee's counsel.

*Jones & Campbell,* for appellee.

1. The uncontradicted evidence shows that the foreman knew, or by the exercise of ordinary care could have known, that the gun was on the hand-car.

It is the duty of a master to use reasonable or ordinary care to provide a reasonably safe place in which the servant is to work. This is not an assignable duty, but, if delegated, the master is liable to the same extent. Thompson on Neg. (2 ed.), § 3763. It is also a primary duty to use ordinary care to keep the place reasonably safe and to protect it from volunteers and intermeddlers. *Id.* (2 ed.), § 3755; 87 Ark. 324. It is his duty not to order the servant into a dangerous place, himself knowing the danger, or by the exercise of ordinary care could know it, when the servant is ignorant thereof or does not understand and appreciate the peril. 77 Ark. 458; 79 Ark. 20; 95 Ark. 290-295; 97 Ark. 364.

The foreman stood in the place of the appellant. His acts were the appellant's acts, and for his negligence appellant is liable. 54 Ark. 289; 58 Ark. 76; 81 Ark. 598; 56 Ark. 238; 87 Ark. 324; 98 Ark. 38.

The proposition that there is no duty to warn where the servant has equal knowledge with the master, can have no application where the servant does not actually

know of the danger and appreciate the peril, and is acting in an emergency under the direct orders of the superior.    53 Ark. 466; 77 Ark. 458; *Id.* 375; 97 Ark. 364; 95 Ark. 295.

2.    The court might with propriety have instructed a verdict for the plaintiff.    But it was not error to submit the questions of fact to the jury.    If they have returned a verdict for the proper party, the judgment will not be disturbed.    54 Ark. 303.

Hart, J.    Appellant prosecutes this appeal to reverse a judgment against it in favor of appellee for damages sustained by him while in its employ.    The facts relative to the accident, as testified to by appellee himself, briefly stated, are as follows:

In April, 1912, George A. Rie, a boy eighteen years old, was working as a section hand on the Bonnerville branch of appellant's line of railway in Jackson County, Arkansas.    He had worked on this section at intervals for about a year and for about three months before he received the injuries for which he sues.    On the 28th day of April, 1912, the section crew consisted of John Cannon, foreman, Lewis Matthews and George A. Rie. The foreman and these two hands worked in the forenoon and came into Estico, a small station on this line, where the foreman lived, for dinner.    They worked at the station about an hour after dinner, when the tie train came along.    The foreman, Matthews and Rie boarded this train to unload ties along the track.    The foreman said to his stepson:    "Bob, will you help bring the hand-car down for us to come home on?"    Fred, a young son of the foreman, said:    "Yes, Bob; we will take the car down there and take the gun along and kill some frogs." Prior to this time, the young son of the foreman had, on several occasions, gone out on the hand-car with him and the section crew, and carried a twelve-gauge shotgun along, for the purpose of shooting frogs and birds. Sometimes he would leave the gun in the car, and sometimes he would take it out and hunt while the men were at work.    On the day in question, the gun was not in the

car at the time the section foreman asked his son and stepson to take the car down to the next station, but the tools usually used by the men while at work were in the hand-car. The foreman and the two section men got on the tie train and unloaded ties until they came to the next siding, and there the car containing the ties was set out. The section foreman and his men continued at work unloading the ties, and while so engaged the boys brought the hand-car down, left it on the main track, and went off some distance away. The section foreman saw the mail train approaching, and directed the section men to take the car off the track. George Rie proceeded in a hurry to the hand-car, and, lifting it by the handles on one end, turned it around and pulled it off the track. Just after he had gotten it off of the track the mail train passed by, going at the rate of about eighteen miles per hour. Before Rie lifted the hand-car from the track, he threw a couple of jacks off of it, but left the tools on the car. After the mail train had passed, he took hold of the hand-car and proceeded to lift it back on the track. While he was doing this, the gun fell off of the hand-car, struck the rails, exploded, and some of the shot struck Rie, severely injuring him. Rie says that he heard the son of the foreman tell his step-brother that he would carry the gun along and shoot some frogs, but says that when he went to lift the car off of the track he was in a hurry to get it off before the mail train arrived, and did not think about looking to see if the gun was in the hand-car; that he did not see the gun in the hand-car, and did not know it was there until after he was shot. He admits that he knew that the boy had carried the gun on other occasions while they were at work, and sometimes left it in the car. Rie said that the section foreman was as close to his son as he was when the boy stated that he would carry the gun along, but did not say or do anything that would indicate whether or not he heard the boy say he would take the gun along.

It is first contended by counsel for appellant that the court erred in submitting the case to the jury. They

rely, for their contention, on the cases of *Chicago, R. I.
& P. Ry. Co.* v. *Smith,* 63 Pac. (Kan.) 294, and *Sweeden,*
v. *Atkinson Improvement Co.,* 93 Ark. 397.

The Smith case is similar to this in that a section
man was injured by a shotgun in a hand-car which ex-
ploded while the car was being pushed along by the sec-
tion foreman and his crew.  In that case, however, the
undisputed evidence shows that the gun belonged to the
section foreman, and that it was carried along and used
both by himself and by Smith, who was injured, for pur-
poses of their own.  They carried it along for the pur-
pose of shooting game while at work along the section,
and both of them used the gun for this purpose.  And
the injured employee knew that it was on the hand-car
for that purpose on the day he was injured.  Here, the
injured employee had never participated in the use of
the gun, and did not know that it was on the hand-car
at the time he was injured, except as that fact might be
inferred from the declaration of the foreman's little son
that he would carry it along on that day.  He says, how-
ever, that he was directed to take the hand-car off of
the track in a hurry, and for that reason did not exam-
ine to see if the gun was there, and did not think about
it being there.

In the Sweeden case, during the noon hour, when
passengers were not accustomed to ride on the elevator,
the servant in charge invited a child to ride in it with
him to the top story of the building so that they might
go into a room and view a parade.  The court said that
this act of the servant was not for the purpose of fur-
thering the interests of his employer, nor was his act
incident to the business of the elevator company by which
he was employed.  That it was wholly and exclusively a
purpose of his own, and, for that reason, the company
was not liable.  The court held, however, that the mas-
ter is civilly liable for an injury caused by the negligent
act of his servant, when done within the scope of his
employment, even though the master did not authorize

or know of such acts, or may have disapproved of or forbidden them, but that the master is not liable for an independent, negligent or wrongful act of a servant, done outside of the scope of his employment.

In the case of *Galveston, Harrisburg & San Antonio Ry. Co. v. Currie,* 10 L. R. A. (N. S.) (Tex.) 367, the facts were that the foreman of the railway company's shop, who had a crew of men under him, as a prank, turned compressed air from a hose on one of them, striking him with the air on his buttocks. A subsequent medical examination and operation demonstrated that the air had entered through the clothing into the rectum, perforated and lacerated the intestines in many places, eventually causing death. The court held that the injury did not occur from anything done in the performance of a duty to the master, but was caused by the independent act of the servant, in no wise connected with the duties being performed by him for the master. In discussing the question of the liability of the railway company, the court said:

"For reasons of public policy, the law holds the master responsible for what the servant does, or omits, in conducting the master's business, because the master has voluntarily substituted for his personal management and supervision that of the servant. But the law also recognizes that the servant is still an independent and responsible being, with capacity, which the master can not effect or control, to engage in projects of his own, and does not include in the responsibility laid upon the master, liability for those acts of the servant which are but the exercise of his freedom about his own affairs. The fact that the servant, in pursuing his own business or pleasure, neglects, also, to perform some duty which rests upon the master, may make the master responsible if injury fall upon another as the consequence of that neglect; but that is a very different proposition from that maintained by plaintiffs, asserting liability for an injury resulting, not from the mere neglect, but from the positive personal wrong, of the servant. This may

be illustrated by reference to the leading case in this country upon the subject, which is stated in the section above quoted from Thompson on Negligence. *Pittsburg C. & St. L. R. Co.* v. *Shields*, 47 Ohio St. 387, 8 L. R. A. 464, 21 Am. St. Rep. 840, 24 N. E. 658.

"The injury there was not inflicted by the servant in the attempt to play a joke, but resulted from his negligence in leaving the cartridge where the children found it; in other words, from his failure to safely keep it. The question we are discussing would have arisen if the servant, in the effort to injure or frighten, and not in the performance of any duty, had caused damage by exploding the cartridge. A liability might have arisen, also, if the car, in passing over the cartridge, had exploded it, and injured some person, because the injury would have resulted from the movement of the defendant's car over its track in the doing of its business."

It is the rule that masters are bound to use ordinary care to furnish to their servants safe and suitable tools and places to work, and that they may entrust that duty to a particular employee. So here, it was the duty of the master to use ordinary care to furnish Rie a safe place in which to work, and this duty of the master was delegated by it to the section foreman. It is a matter of common knowledge that a loaded gun is a dangerous agency, and if the foreman permitted the gun to be placed among the tools on the hand car at a time when the section crew would be likely to be called upon to use the hand car without knowing that the gun was there, it would be a question for the jury to say, under all the circumstances, whether this was negligence for which the master would be liable. When Rie was injured, he was in the performance of a duty for the master's benefit, and the injury resulted while he was performing that duty. It being the duty of the railroad company to furnish Rie a safe place to work, and the railroad company having delegated that duty to its section foreman, if the latter, in pursuing his own pleasure, or that of his son, neglected to perform this duty, and in consequence of

such neglect, injury resulted to Rie while he was performing a service for the railroad company required of him in the course of his employment, the railroad company would be liable, and the question of negligence or not was, under all the facts and circumstances of the case, one for the jury. Therefore, we hold that the court did not err in refusing to direct a verdict for the appellant.

It is next contended by counsel for appellant that the court erred in giving instructions numbered 1 and 2 at the request of appellee.

1. "If you believe that the plaintiff, George A. Rie, was in the employment of the defendant company as a section hand, and that while so engaged he was ordered and directed by John Cannon, the section foreman, to remove a hand car from the track of defendant company in order to get it out of the way of an approaching train or motor car, and that the defendant company, acting by its foreman, John Cannon, had negligently permitted a loaded gun to be placed on the hand car, and that after being directed to remove the car and in the discharge of such duty, the plaintiff, acting with due care, lifted up one end of the car, which was a necessary effort to remove it from the track, and that while he was so engaged, the gun was discharged and the contents took effect in the body and person of plaintiff, then your verdict should be for the plaintiff."

2. "If you believe from the evidence that the presence of the gun on the car was unknown to plaintiff, and that the presence of the gun was known to the foreman, or if the foreman, by the exercise of ordinary care, could have known of its presence on the car, and by the exercise of ordinary care, could have foreseen the resultant injury, then your verdict may be for the plaintiff."

In this contention, we think counsel are correct. Instruction No. 1 is peremptory in its nature. The instruction, in effect, told the jury that if they should find that the foreman permitted the loaded gun to be placed on the car, this act, of itself, would constitute negligence. This is not the law. Under the principles of law above

declared, we are of the opinion that the question of negligence of the defendant was one of fact to be determined by the jury under all the facts and circumstances adduced in evidence. It is true, there is no dispute about the material facts in the case; but in such cases it is only where all reasonable minds must draw the same conclusion from the evidence that the question is one of law for the court. The rule is that where there is room for an honest difference of opinion among intelligent men as to whether the conduct of the defendant was that of an ordinarily prudent person, in view of all the facts and circumstances surrounding him, the question of negligence is one for the jury, although the facts are undisputed. Therefore, we think, under the facts and circumstances adduced in evidence by appellee himslf, that the question of whether the foreman knew that his son was going to carry the gun along on the hand car or not, and the further question of whether, if he did know it, such permission on his part under the circumstances would constitute negligence, was a question of fact which should have been submitted to the jury.

Instruction number two is erroneous, because it told the jury that if the foreman, by the exercise of ordinary care, could have known of the presence of the gun on the car, and, by the exercise of ordinary care, could have foreseen the resulting injury, then a verdict must be returned for appellee. This part of the instruction was erroneous, because it made it the duty of the foreman to make an examination to ascertain if there was a loaded gun, or any other dangerous agency, on the car, when, as a matter fact, he might not have anticipated the presence of any such agency.

It is also urged by counsel for appellant that the evidence before the jury did not show any permanent injury to appellee, and for this reason the instruction of the court in regard to the measure of damages was erroneous. We will not decide this question for, on a new trial, the testimony on that point will necessarily be more fully developed, for by that time the question of whether

the appellee's injuries are permanent or not will doubt-less be gone into more fully and with greater certainty.

Other errors are pressed upon us for the reversal of the judgment in this case, but, in as much as they are not likely to arise on a retrial of the case, we do not deem it necessary to determine them.

For the error in giving instructions No. 1 and No. 2, the judgment will be reversed and the cause remanded for a new trial.