AMERICAN RAILWAY EXPRESS COMPANY *v.* MACKLEY.

Opinion delivered April 11, 1921.

1.  APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—In a case of conflicting evidence, the jury's verdict in favor of the plaintiff must be accepted as true on appeal.

2.  MASTER AND SERVANT—LIABILITY FOR SERVANT'S ACT.—The test of a master's liability for the act of a servant is, not whether a given act is done during the existence of the servant's employment, but whether it was committed in the prosecution of the master's business.

3.  MASTER AND SERVANT — LIABILITY FOR KILLING BY SERVANT.— Where, in a dispute concerning a shipment, plaintiff accused defendant express company's driver of lying, and subsequently the

driver armed himself, and returned to plaintiff's place of business for the purpose of obtaining a receipt and payment of the express charges, and demanded an apology from plaintiff's husband and in connection therewith shot him, the demand for an apology was no part of his employment; and the express company was not liable.

Appeal from Hempstead Circuit Court; *George R. Haynie,* Judge; reversed.

*Mehaffy, Donham & Mehaffy* and *King, Mahaffey & Wheeler,* for appellant, and *A. M. Hartung,* general attorney, of counsel.

1. The master (appellant) was not liable for the unauthorized tort of the servant. He was not acting within the scope of his employment. 255 S. W. 597; 133 Ark. 327; 131 *Id.* 411; 136 *Id.* 123; 119 *Id.* 28. His act was not done in the prosecution of the master's business, and the master was not liable.

2. The argument of plaintiff's attorney, Mr. Parks, to the jury, was improper and prejudicial.

3. The verdict is excessive. 65 Ark. 619; 89 *Id.* 522; 106 *Id.* 177; 115 *Id.* 101.

4. The court erred in its instructions for plaintiff Nos. 1, 5 and 6. No liability was shown by the evidence. 75 Ark. 589; 225 S. W. 597. The act was not committed in the prosecution of the master's business. This is the test. 77 Ark. 606; 23 Neb. 582; 40 Ark. 323; 84 *Id.* 193; 93 *Id.* 397; 111 *Id.* 208; 132 *Id.* 282; 96 S. W. 1073; 113 Pac. 386; 107 Ala. 233; 115 Ark. 288; 153 S. W. 694. The rulings of this court are sustained by all the text writers. See Sh. & Redf. on Neg. (6 ed.), § 148; Clark & Skyles on Law and Agency, § 502; 2 Cooley on Torts (3 ed.), § 627; Wood on Master and Servant (2 ed.), p. 585, § 307.

*Tillman D. Parks* and *James D. Head,* for appellee.

1. The express company was liable for the acts of its agent; he was acting on the master's business, and was done in the course of his employment. 93 Ark. 397; 75 *Id.* 579; 115 *Id.* 288; 59 S. E. Rep. 189; 93 Fed. 936; 222 *Id.* 889; 82 N. W. 304; 93 N. W. 598; 135 Ind. 524;

113 S. W. 429; 21 Am. Rep. 597; 2 Cooley on Torts (3 ed.), § 630, p. 1024; 21 Am. Rep. 597; 175 Fed. 61; 242 *Id.* 926; 231 *Id.* 926; 143 S. W. 555; 57 So. Rep. 718; 64 N. Y. 136; 125 S. W. 925; 182 *Id.* 981; 7 S. E. Rep. 411; 25 *Id.* 565.

2. The verdict is not excessive. 71 N. Y. 531; 118 Ark. 36; 77 *Id.* 1; 93 *Id.* 183; 135 *Id.* 56; 115 *Id.* 308; 216 S. W. 1057; 153 S. W. 651; 76 Ark. 377; 106 *Id.* 177; 82 *Id.* 504.

SMITH, J. On and prior to the 7th day of March, 1919, Jeff Hines was in the employ of the appellant express company in the city of Texarkana as a driver, and delivered the perishable express, which included consignments of flowers. Peter W. Mackley was a florist in that city, and his wife worked in his place of business. On the afternoon of March 7 a shipment of flowers from Neosho, Missouri, was delivered by Hines to the floral shop. Mackley was absent at the time, and his wife was in charge. The flowers were in a damaged condition, and Mrs. Mackley asked when they had been received, and Hines answered by giving the number of a train on which they had been shipped. Mrs. Mackley asked Hines why he wanted to tell a lie about the flowers, as the train on which he said they had arrived did not pass through Neosho. While the controversy was going on, Mrs. Mackley telephoned the agent of the express company, who sent his subagent, one Stuckler, over to the floral company, and, about the time Stuckler arrived, Mackley, who had also been called by his wife, came into the shop, and Mackley and Stuckler agreed on an adjustment of the damage to the flowers by reason of the delay in the delivery thereof. In the meantime Hines left the premises of the floral company in the course of his business without having taken the receipt of the floral company for the flowers and without having collected the charges on the express.

On the next afternoon Hines returned to the floral company for the purpose of collecting the charges on the

shipment and of taking the receipt of the floral company therefor. Mackley walked to the front of the store to sign the receipt in the book of the express company provided for that purpose and to pay the charges on the shipment of the previous day. There was nothing about signing the book or paying the charges over which Mackley and Hines could disagree or did disagree. The signing of the book was a perfunctory act which Mackley was performing when the trouble arose which forms the basis of this litigation. Mackley had written the words "Peter W. Mack" without having quite finished the "k," when Hines referred to the dispute with Mrs. Mackley on the day before. Mrs. Mackley and her friend, a Miss Van Treese, were seated in the rear of the shop, and heard the word "apologize" spoken in a tone loud enough to attract their attention. Upon looking up Mrs. Mackley saw that her husband's hands were in the air, and that Hines had a pistol pointed in her husband's face. She started at once to her husband's assistance, and in going to him passed a drawer in which her husband kept a pistol. She picked the pistol up and continued on her way. She testified that she had never shot a pistol and did not intend to shoot Hines, but that it was her intention to give her husband the pistol so that he could defend himself, but before she could do so Hines shot and killed Mackley and shot and seriously injured her.

Two suits were brought against Hines and the express company, one being by Mrs. Mackley in her own right, and the other by her as administratrix of her husband's estate. There was a recovery in each case; but upon appeal here the cases have been briefed together.

Hines gave a different version of the shooting, and claims to have fired in self-defense. But we must, of course, accept Mrs. Mackley's version as true in view of the jury's verdict. Hines was tried and given a long term sentence in the penitentiary for the shooting.

Hines testified that Stuckler offered to go to the floral company and collect for the shipment and obtain the receipt; but he declined the service. No attempt was

made to show, however, that any representative of the express company knew that Hines contemplated renewing the difficulty of the day before.   Hines testified that he revolved in his mind, after he went to bed that night, what Mrs. Mackley had said to him, and he determined to demand an apology from her husband.   With this thought in mind he borrowed a pistol from a friend.   The pistol had only one cartridge—an old one—in the cylinder, so Hines bought new cartridges and loaded the pistol.   Hines had no duties which required him to go armed, and he had only armed himself the day of the shooting; and there is no contention that any other employee of the express company was advised of that fact.

In the preparation of the respective briefs counsel have, through their research, collected many cases dealing with the liability of the master for the unauthorized tort of the servant committed during the course of his employment.   It would be a work of supererogation to attempt to review these cases.   The subject is one which has frequently engaged the attention of this court, and the law on the subject is thoroughly well settled.   A very recent case is that of *Wells Fargo & Company Express* v. *Alexander,* 146 Ark. 104.

The Alexander case, *supra,* collects a number of our cases on the subject.   In addition to the cases cited in the Alexander case, *supra,* see also other cases more or less recent as follows:   *Healey* v. *Cockrill,* 133 Ark. 327; *C., R. I. & P. Ry.* v. *Womble,* 131 Ark. 411; *C., R. I. & P. Ry. Co.* v. *Gage,* 136 Ark. 123; *St. L., I. M. & S. Ry. Co.* v. *Lavensduskey,* 87 Ark. 540; *St. L. & San Francisco R. Co.* v. *Van Zant,* 101 Ark. 586; *St. L., I. M. & S. Ry. Co.* v. *Robertson,* 103 Ark. 361; *Arlington Hotel Co.* v. *Tanner,* 111 Ark. 337; *E. L. Bruce Co.* v. *Yax,* 135 Ark. 480; *St. L., I. M. & S. Ry. Co.* v. *Robinson,* 95 Ark. 39; *Mayfield* v. *St. L., I. M. & S. Ry. Co.,* 97 Ark. 24; *St. L. & S. F. R. Co.* v. *Rie,* 110 Ark. 495; *Pine Bluff & A. R. Ry. Co.* v. *Washington,* 116 Ark. 179; *St. L., I. M. & S. Ry. Co.* v. *Tukey,* 119 Ark. 28.

The doctrine of all these cases is that the test of the master's liability is, not whether a given act is done during the existence of the servant's employment, but whether it was committed in the prosecution of the master's business.

In the case of *St. L., I. M. & S. Ry. Co.* v. *Grant*, 75 Ark. 579, we said that if "the agent was acting for his principal, and in pursuance of his real or apparent agency, at the time the tort was committed, then it may be said that he was acting in the course of his employment, and the principal will be liable for such a tort; whether authorized or not."

Appellee cites and relies on the case of *Bryeans* v. *Chicago Mill & Lbr. Co.*, 132 Ark. 282. In the second appeal of this case (*Chicago Mill & Lbr. Co.* v. *Bryeans*, 137 Ark. 341), an application of the law of the case, as announced in the first opinion, was made to the facts as developed at the second trial. It was the duty of the servant who committed the tort in that case to prevent nonemployees from interfering with employees in the discharge of their employment, and the shooting in that case grew out of the act of the servant in discharging that duty. The defense was made by the master in that case that the killing grew out of a private quarrel. We there said:

"In one of the latest cases upon this subject we said: 'No hard and fast rule has been or can be prescribed by which to determine what acts are within the scope of a servant's employment. Each case is governed by its own particular facts, under certain general rules of law.' Cooley says: 'Where a servant acts without reference to the service for which he is employed, and not for the purpose of performing the work of the employer, but to effect some independent purpose of his own, the master is not responsible for either the acts or omissions of the servant.' Cooley on Torts, 1032; 26 Cyc. 1536. Conversely, when the servant acts with reference to the services for which he is employed and for the purpose of performing the work of his employer, and not for any

independent purpose of his own, but purely for the benefit of his master, it is generally held, under such circumstances, that the acts so done are within the scope of the servant's employment."

We can not make the law of the subject plainer. The difficulty in that case, as in this, and in most cases of this character, is in determining whether or not the servant has stepped aside from the employment; whether he was undertaking to discharge the duties of his employment, however erroneous or mistaken his conception of his duties may have been; or whether he is pursuing his own plans and purposes which have no relation to his employment?

Applying this test, we think there is no liability in this case. The matter over which the difficulty arose had been settled twenty-four hours before. The company had admitted its liability, and had agreed to discharge that liability. The settlement was mutually satisfactory, and was final. There would have been no trouble but for the fact that Hines thought an apology was due him for what Mrs. Mackley had said the day before. His demand for an apology was made during his employment; but it was no part of his employment. It was in no manner necessary for him to obtain this apology to discharge his employment, and his act in demanding it must be attributed to a feeling of personal resentment, or injured pride, or some other emotion impelling him to rashness, of which the master was not advised and for which the master was not responsible, because it was a matter in which the master had no concern.

The judgment of the court below must therefore be reversed, and the cases will be dismissed.

HUMPHREYS, J. (dissenting). Even if it be conceded that an express company is liable to third parties for only such torts as their servants may commit that grow out of, or have relation to, the particular business being transacted at the time by the employee for the master,

I can not agree with the conclusion of the majority that the tort committed by Hines in the instant case was independent of, or disconnected from, his agency. He shot and killed Peter W. Mackley and wounded Mrs. Chloe Mackley while obtaining a receipt and collecting the charges on a shipment of flowers, over which a controversy had arisen the day before, in the course of which Hines had been charged with falsifying as to the train on which the shipment arrived. While it is true the amount of damage caused by the delayed shipment was agreed upon the day before the tort was committed, the transaction, out of which the dispute arose, leading to the commission of the tort was not closed, and during the continuation of the same transaction and before completed, Hines renewed the controversy by demanding an apology for what had been said to him in the course of the dispute the preceding day. The tort resulted on account of the quarrel begun one day and continued the next, growing out of and relating to the same business transaction, which transaction was clearly within the scope of the agent's authority; and I think, on that account, the appellant is clearly liable for damages resulting from the tort.

I therefore dissent from the judgment of reversal and dismissal in each case.