AMERICAN RAILWAY EXPRESS COMPANY v. DAVIS.

Opinion delivered February 27, 1922.

1. REMOVAL OF CAUSES—DIVERSITY OF CITIZENSHIP.—An action instituted in a State court within a Federal district other than that of the residence of either the plaintiff or the defendant cannot be removed on the ground of diversity of citizenship.

2. DEATH—ACTION FOR WRONGFUL KILLING—WHAT LAW GOVERNS.— Where an injury resulting in death was caused in another State, the right to recover and the measure of recoverable damages must be tested by the laws of that State.

3. MASTER AND SERVANT—LIABILITY FOR TORT BY SERVANT.—The test of a master's liability for a tort committed by a servant is whether the act complained of was done in the prosecution of the master's business, and not whether it was done during the existence of the servant's employment.

4. MASTER AND SERVANT—LIABILITY FOR NEGLIGENCE OF FELLOW-SERVANT.—To render a master liable for injury to a servant caused by the negligence of a fellow-servant in handling a pistol intrusted to him by the master, the injury must have occurred while the fellow servant was engaged in the master's service, and not in his own private undertaking.

5. MASTER AND SERVANT—NEGLIGENCE OF FELLOW SERVANT—LIABILITY. —A master is not liable for an injury to a servant caused by the

negligence of a fellow-servant in using a pistol in play with his co-employees unless the master was aware of such practices and was guilty of negligence in failing to prevent them.

6. MASTER AND SERVANT—SAFE PLACE TO WORK.—The rule requiring a master to furnish a reasonably safe place for its servant to work has no application to a case where a servant was injured at a time when he was not in his proper working place or engaged in the performance of his duties.

Appeal from Little River Circuit Court, *James S. Steel,* Judge; reversed.

*Cottingham, Hawes, Green & McInnis,* and *June R. Morrell,* for appellant.

1. On appellant's petition the cause should have been removed to the Federal court. Both parties are non-residents of this State, the jurisdictional amount is involved, and there is a diversity of citizenship between the plaintiff and the defendant. 265 Fed. 715; 245 *Id.* 169; 251 *Id.* 337; 256 *Id.* 882; 261 *Id.* 697.

2. Appellant cannot properly be held liable, and the court should so have instructed the jury, if Garrison and Davis, at the time the injury was inflicted, were engaged, not in the service of the master, but in play or sport, since in that case, the act of Garrison in inflicting the injury was not within the scope of his employment. Neither can it be held liable if, while working for the appellant, these parties entered into a frolic or play, and Garrison, in order to bring the play to an end, pointed the pistol in fun to scare Davis and accidentally discharged the same and thereby injured and killed Davis. 115 Ky. 447, 74 S. W. 171; 84 Kan. 19, 113 Pac. 386; 110 Atl. (Conn.) 540; Sherman & Redfield on Negligence, 6th Ed. by Street, § 148; Clark & Skyles on Law of Agency § 502; 2 Cooley on Torts, 3d Ed. by Lewis, § 627; Wood, Law of Master & Servant, 2d Ed., 585 § 307; *Id.* p. 586; 185 Pac. 694.

It was erroneous to instruct the jury to the effect that if the company placed the pistol with Garrison in connection with the performance of his duty, and the

latter was carelessly and negligently handling the same, *even though not in connection with the performance of any of the duties for which it had been placed with him,* and the pistol was accidentally discharged and injured Davis, the company would be liable.   77 Ark. 606, 92 S. W. 861; 230 S. W. (Ark.) 598; 84 Ark. 193; 93 *Id.* 397; 111 *Id.* 208; 115 *Id.* 288; 132 *Id.* 282; 100 Tex. 136, 96 S. W. 1073.

3.   There is no proof to sustain the allegations of the complaint that the servant, Garrison, was lacking in maturity of judgment, and that he was of a more than ordinarily playful and prankish nature and unsafe on that account.   The evidence wholly fails to show negligence on the part of the company in this respect, or that it was the proximate cause of the injury.   91 Ark. 260; 120 S. W. 984; 255 Fed. 665; 92 Ark. 138; 122 S. W. 113.

*Stephenson & Holloway* and *Reynolds & Steel,* for appellee.

1.   Garrison, as custodian of the pistol, a dangerous instrumentality, owed the same duty to Davis in using it, as he would in using it for the purpose for which it was placed with him by the company, and his default in that respect was the default of the master.   Labatt, Master & Servant, § 2503; 8 L. R. A. 464; 60 L. R. A. 158; 56 L. R. A. 748 and cases cited; 70 L. R. A. 503; 85 Miss. 426 and cases cited.   A pistol is a dangerous instrumentality. 18 R. C. L. 790; 70 L. R. A. 503; 10 L. R. A. (N. S.) 375, note; 110 Ark. 495.

2.   The case was not removable to the Federal court. 51 Law. Ed. 264; 209 U. S. 440; 52 Law. Ed. 990; 219 U. S. 363; 55 Law. Ed. 252.

3.   The right to maintain an action to recover for acts causing death or bodily injury is to be determined by the statutes and judicial decisions where the cause of action arose.   62 Ark. 254; 79 *Id.* 488; 82 *Id.* 96; 54 S. W. (Ark.) 865; 154 U. S. 190, 38 Law. Ed. 958.

4.   The character and measure of damages recoverable in an action for tort are governed by the law of the

State in which the cause of action arose, and not by the law of the forum.  5 R. C. L. 1041; 56 L. R. A. 312, note; 40 L. R. A. (N. S.) 1097; 50 Ark. 155; 154 U. S. 190; 38 Law. Ed. 958; 54 S. W. 865.

Under the Oklahoma decisions, where this case originated, a plaintiff may recover for damages that might be suffered beyond the majority of a minor child.  41 Okla. 454.  See also, for construction of Oklahoma statutes adopted from Kansas, 86 Pac. 391; 6 L. R. A. (N. S.) 861; 48 L. R. A. (N. S.) 688, note, and Kansas cases there cited.  See also 55 Okla. 287 and cases cited; 48 Ark. 833.

McCulloch, C. J.  Elmer Davis, a boy 16 years old, the plaintiff's son, was shot and killed on the premises of the defendant express company at Hugo, Oklahoma, the shot being accidentally fired from a revolver in the hands of Clyde Garrison, one of the employees of the company.  Elmer Davis was himself an employee of the company at that time. This is an action instituted in the circuit court of Little River County against the company by the next of kin of Elmer Davis to recover damages resulting to them from the loss of the services of said decedent.

It is alleged in the complaint that Garrison was employed by the company as station agent or money clerk at Hugo, and that he had been furnished with a pistol for use in the course of his employment to protect the money and other valuables of the company; that Elmer Davis was employed by the company to serve at said station of Hugo under the direction and supervision of Garrison, and that on May 9, 1920, Garrison, at a time when he was not required by his duties to use or handle said pistol, wrongfully and negligently did so handle the pistol as to cause it to be discharged, and that the load took effect in the body of Elmer Davis and inflicted a wound, from which he shortly thereafter died.

The complaint also contains an allegation that Garrison, on account of his youth and immature years, was lacking in judgment and proper understanding to dis-

charge the duties of his position and to be the custodian of a deadly weapon, and that the company had knowledge of such immature judgment, and was guilty of negligence in putting the pistol in his possession and charge. There was no effort, however, to prove the charge that the company was guilty of negligence in employing an incompetent or negligent servant, and this feature of the case seems to have passed out in the trial below.

The company answered the complaint, denying any act of negligence on its part or on the part of its agent while in the discharge of his duty, and alleged that the accidental killing of young Davis occurred while Garrison was using the pistol for his own purposes, outside of and beyond the line of his duties.

The case was tried before a jury, and the verdict was in favor of the plaintiff for the recovery of damages in the sum of $15,000. The defendant in apt time presented its petition and bond for removal to the Federal court on account of diversity of citizenship. The court overruled this petition, and this ruling is the subject-matter of the first assignment of error, on this appeal. The case in that respect falls within the decision of the Supreme Court of the United States in *Ex parte Wisner,* 203 U. S. 449, to the effect that an action instituted in a Federal district other than that of the residence of either the plaintiff or defendant cannot be removed on the ground of diversity of citizenship. We have followed that rule in numerous cases. See the recent case of *C. R. I. & P. Ry. Co.* v. *Cobbs,* 151 Ark. 207.

There is little, if any, conflict in the testimony of the witnesses. The killing was accidental, and it was caused by the negligent act of Garrison, committed, however, without any bad motive or ill feeling. The two young men were good friends, and were in play with each other immediately before and at the time of the accidental killing. The testimony of Garrison tends to show that he had the pistol in his hand for the purpose of bringing the

play to a close at the time the pistol was accidentally discharged.  Garrison and Davis were nearly the same age, and were both employed by the express company at Hugo.  Garrison had been working there about two years, and Davis had been working there four or five months. Garrison occupied the position designated as depot agent and also as "money clerk," and Davis was employed to fill the position of "platform man," his duties being to line-up the trucks for the arrival of trains, to help unload the express matter on trucks and drive the delivery wagons in gathering and distributing the express matter. The office was under the general management of Mr. Talkington, who had an office up town and usually visited the office at the depot every day for the purpose of giving general directions in the operations of the business at that office.  There was another man—Snow— filling the same position at the station as Garrison filled, and they worked in shifts.  They had charge of the station in the absence of Talkington and handled money and other valuables received for transportation, and there was evidence tending to show that Davis worked under the direction of the one of these station agents on duty at the time.

The company furnished the depot agent with a pistol to use while on duty in the protection of valuables, and the pistol was used by the agent in meeting trains and in transporting valuable matter about the city for the purposes of delivery.  The pistol furnished on this occasion was a .45 calibre Smith & Wesson, and printed instructions were given to the agents with respect to careful use of the weapon.

The killing of young Davis occurred about noon, or just after the noon hour, on Sunday, May 9, 1920.  The young men were good friends and met up-town during the morning and rode together down to the station, and just before noon they lunched at a near-by restaurant. As they returned from the restaurant to the railroad station, in which the express office was located, they engaged in play, which continued after they reached the

station building. The time for the arrival of a passenger train was approaching, and, after the play had progressed for awhile, Garrison desired to bring it to an end and went to his office, where he occupied a desk, and told Davis to "line-up the trucks." Garrison went to his room and sat down at his desk to make out some bills, but Davis persisted in carrying on the frolic. There was a window partially raised in front of Garrison's desk, and Davis procured a rug, rolled it up and was pushing it through the window at Garrison. Garrison testified that he knew that Davis was afraid of pistols and could be easily frightened with one, so, in order to end the play and cause Davis to go to his work, he took the pistol from the place where it lay on the top of the safe, and, after un-breeching it and revolving the cylinder so as to make the hammer rest, as he thought, on an empty cylinder, he presented the pistol at the window, and it was accidentally fired while in his hand. Garrison could not say whether he pulled the trigger or not and was not sure whether he had raised the hammer of the pistol. His testimony was vague and uncertain on this point, but it is clear and undisputed that he took the pistol and presented it toward the window where Davis stood in mimic offensive, and that it was in some way accidentally discharged. There can be no doubt but what he inadvertently left the pistol cocked and pulled the trigger, for he did not drop the pistol, and there was no other way in which the hammer could have been brought in contact with the shell. The statement of Garrison in his testimony was that he knew Davis was afraid of a gun, "so I just raised the gun up at the window so as to scare him and let him go on with his work." When the pistol was discharged, Davis cried out in fright and pain, and on examination it was found that the bullet had struck him in the side. He lived a few days, and died from the effects of the wound.

The case was submitted to the jury on instructions given at the instance of the plaintiff, over the objections of the defendant, which told the jury, in substance, that

if the defendant furnished the pistol to its agent, Garrison, for use in connection with the performance of his duties, and Garrison, while in the station or express office, was guilty of negligence in handling the pistol and thereby caused the injury and death of Davis, the company was liable, even though the use of the pistol was not in connection with the performance of any duty for which it had been placed in the hands of the agent. The court refused to give to the jury instructions requested by the defendant, which would have declared the law to be that the defendant was not responsible for the negligent act of Garrison if the latter was acting beyond the line of his duty and for his own private purposes while in play with a fellow employee.

The injury having occurred in the State of Oklahoma, the right to recover and the measure of recoverable damages must be tested by the laws of that State. *Carter* v. *Goode,* 50 Ark. 155; *St. L. & S. F. Ry Co.* v. *Brown,* 62 Ark. 254. Aside from the statutes conferring a right of action when death results from wrongful act of another, no statute of Oklahoma nor decision of the courts of that State fixing the basis of liability in cases of this character has been called to our attention, therefore the case must be determined according to general principles of law as declared in the adjudicated cases in this and other States.

We have frequently announced and steadily adhered to the rule that "the test of liability of a master for a tort committed by a servant is whether the act complained of was done in the prosecution of the master's business—not whether it was done during the existence of a servant's employment." The cases on this subject are reviewed in the recent case of *American Railway Express Co.* v. *Mackley,* 148 Ark. 227. The facts of that particular case are radically different from the facts of the present case, and the decision in that case has little, if any, bearing on the present one, further than it declared and adhered to the above stated rule so often announced by this court.

The instructions upon which the court submitted the present case to the jury are diametrically in conflict with the rule announced above, and the court refused to submit the case, at the request of defendant, upon instructions in harmony with that rule.

Counsel for plaintiff rested their case solely upon the theory that the defendant intrusted to its agent the care and custody of an inherently dangerous instrumentality—the pistol—and that the duty of safeguarding and protection from danger, was that of the master, and that the master is liable for any failure or omission in that regard, even though the injury to another resulted while the servant was engaged, not in the service of the master, but in his own private undertaking. That theory has no application to the facts of the present case, even though in the abstract it be treated as a sound doctrine to the extent stated by counsel. It is certainly not correct to state the rule to be that merely because a substance or instrumentality is dangerous the master is responsible for any use which the servant makes of it. In order to render the master liable, the substance or instrumentality must be in use by the servant while discharging his duties to the master, or the injury must result from the inherent dangers lurking in such substances or instrumentality, and not from the voluntary act of the servant in using it for his own purposes. In the present case, if it can be said that a pistol is a thing inherently dangerous, the injury to Davis was not inflicted on account of the inherent danger, but because of the negligent act of a servant wile using the pistol for his own private purposes. It is charged that the pistol was defective, and, conceding that the proof establishes that fact, it does not alter the questions of law applicable to the case, for, even though the pistol was rendered dangerous by the defects, still, if the injury was caused by the servant's use of it for his own private purposes, the defendant is not responsible.

Counsel for plaintiff rely on a few decisions holding the master liable to an injured child for the negligent failure to guard explosives. Two of these cases are decisions of the Supreme Court of Ohio in the cases of *Harriman* v. *Pittsburg, C. & St. L. Ry. Co.*, 45 Ohio St. 11, and *Id.* v. *Shields*, 47 Ohio St. 387. These two cases grew out of the same injury, and separate suits were instituted by two children, almost of tender years, to recover for injuries received. The facts were that torpedoes were furnished to members of a train crew for signal purposes, and one of the members of the crew placed one of the torpedoes on the track, expecting to frighten the passengers when it exploded. It seems that the place where the torpedo was left was near a path traveled by the public, and that when the train moved there was a failure to explode the torpedo and it was afterwards picked up by the children, who were injured in exploding it. Those decisions were based entirely on the ground that the master was responsible where a servant unnecessarily exposed a dangerous substance of that kind so that careless and meddlesome children were injured. We cited the Harriman case with approval in the opinion in the case of *Pittsburg Reduction Co.* v. *Horton*, 87 Ark. 576. We distinguished the case then under consideration from the Harriman case on the ground that the intervening act of negligence of the parent of the child in allowing it to continue to handle and use the explosive was the proximate cause of the injury, rather than the negligence of the servant of the defendant in leaving the explosive exposed at a place where it would likely be picked up by a child. The Harriman case was again cited with approval by this court in *St. L. & S. F. Ry. Co.* v. *Williams*, 98 Ark. 72, where torpedoes were put out for signal purposes, and we held that, if there was negligence in putting out the torpedo where it would be exposed to any intermeddling child, the company would be liable for the act of its agent, but that the use of even an explosive substance in a careful

manner, for necessary purposes, would not create liability. The Harriman case was decided on demurrer, and it did not appear in that case that the agent was acting beyond his authority and for his own private purposes in putting out the torpedo, but that fact was pleaded in the later Shields case, and the Supreme Court of Ohio upheld the liability of the railroad company, notwithstanding the fact that the agent was not acting in the scope of his employment. The court put the decision on the ground that it was the duty of the company to carefully guard the dangerous substance so that others would not be injured by exposure to it. There was language used in the opinion in the Shields case that has some tendency to support the theory of counsel for plaintiff in the present case, but that language does not accord with our views of the law, and we do not approve it. In fact, that decision was very much circumscribed by a later decision of the Supreme Court of Ohio in the case of *Cleveland T. & V. R. Co.* v. *Marsh,* 63 Ohio St. 236 (52 L. R. A. 142), where it was held that a boy who was invited on the premises of the company by an employee for the latter's own private purposes could not recover for an injury sustained by reason of exposure to a dangerous substance (torpedo) negligently put out by servants of the company.

The application of the doctrine insisted on by counsel for the plaintiff is out of harmony with the great weight of authority. *Railway Co.* v. *Bolling,* 59 Ark. 395; *Sweeden* v. *Atkinson Improvement Co.,* 93 Ark. 397; *St. L. I. M. & S. Ry. Co.* v. *Robinson,* 95 Ark. 39; *St. L. & S. F. R. Co.* v. *Rie,* 110 Ark. 495; *Robinson* v. *St. L. I M. & S. Co.,* 111 Ark. 208; *Galveston, H. & S. A. Ry. Co.* v. *Currie,* 100 Texas 136, 96 S. W. 1073; *Johnson* v. *C. R. I. & P. Ry. Co.,* 141 N. W. (Iowa) 430; *Overton* v. *Boston & Maine R. Co.,* 186 Mass. 481; *Sullivan* v. *Louisville R. Co.,* 115 Ky. 447; *Figone* v. *Guisti,* 185 Pac. (Cal.) 694.

We are thoroughly convinced that there is no liability on the part of defendant under this theory of the case, and that the court erred in submitting it to the jury.

There is no liability on the theory that the servant who used the pistol was known to be incompetent or of immature judgment, or that he habitually engaged in play with his co-employees, unless it be shown that the company was aware of such practices and was guilty of negligence in failing to prevent them. *Barrentine* v. *Henry Wrape Co.,* 105 Ark. 485. Moreover, the case was not submitted to the jury on that theory.

The master owed its servants the duty of exercising ordinary care to make the working place reasonably safe, but the company cannot be held liable in the present case on that theory, for the reason that Davis was not, at the time he was injured, in his proper working place or engaged in the performance of his duties. *St. L. I. M. & S. Ry. Co.* v. *Rie, supra.*

If Garrison used the pistol in the discharge of his duties for the purpose of compelling compliance with his directions to Davis to return to work and used excessive force, there would be liability under the doctrine of our decisions in *St. L. I. M. & S. Ry. Co.* v. *Grant,* 75 Ark. 579, and *Bryeans* v. *Chicago Mill & Lbr. Co.,* 132 Ark. 282; but the case was not submitted to the jury on that theory. The instructions entirely ignored the requirement that the act must have been done while Garrison, the servant, was engaged in the master's work in order to create liability, even though Garrison was at the time using the pistol as part of his play with his companion and for the purpose of bringing the play to a close.

The judgment is therefore reversed, and the cause remanded for a new trial.

SMITH, J. concurs.

HUMPHREYS, J., (dissenting). I cannot agree with the majority in their interpretation of the evidence. As

I read it, the depot agent, Clyde E. Garrison, drew the pistol upon the deceased, who was an employee of the appellant under the immediate direction of Garrison, for the purpose of making him go to work for the express company. Garrison had ordered Davis two or three times to go to work, but Davis persisted in playing with him. Garrison knew he was afraid of a gun, and in order to require the deceased to go to work, drew the gun upon him. No one knew the purpose for which the gun was drawn better than Garrison himself. The following interrogatories and answers appear in his evidence:

"Q. Why did you raise the gun up there at the window? A. I knew Elmer (referring to deceased) was scared of a gun, so I just raised the gun up at the window so as to scare him to let him go on and go to his work.

"Q. What did you say, if anything, when you pointed the gun up there? A. Nothing at all.

"Q. Your purpose was to bluff him or frighten him into making him go ahead with his work? A. Yes."

The majority are of the opinion that the evidence presents a disputed question as to whether the pistol was drawn to prevent deceased from further playing or whether to make him go to work. It seems to me that the declared purpose of the agent should settle this question and take it out of the realm of doubt. The undisputed evidence shows that the agent drew the pistol to compel an employee of the company under his immediate direction and control to do the company's work. Excessive force was used to bring about such result. Under the undisputed facts, according to my construction of the evidence, appellant was liable to appellee in damages under the doctrine announced by this court in *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Grant,* 75 Ark. 579; *Bryeans* v. *Chicago Mill & Lumber Co.,* 132 Ark. 282.

It is immaterial whether the cause was submitted to the jury upon a correct theory, as, according to my view, the undisputed facts, under the law, fixed liability upon

appellant. There being no conflict in the evidence upon the decisive issue in the case, and the judgment being correct upon the whole record, it is immaterial that it was submitted upon an incorrect theory or upon erroneous instructions. *Burton & Townsend* v. *Baird & Bright,* 44 Ark. 556; *Hershy* v. *Latham,* 46 Ark. 542; *Arkadelphia Lumber Co.* v. *Whitted,* 81 Ark. 247; *K. C. So. Ry. Co.* v. *Skinner,* 88 Ark. 189.

In my opinion, therefore, the judgment should have been affirmed.