MISSOURI PACIFIC RAILROAD COMPANY *v.* GREGORY.

Opinion delivered March 6, 1922.

TRIAL—DIRECTION OF VERDICT.—In an action against a railroad company for an assault committed by a night operator where there was evidence tending to prove that the assault was committed by defendant's agent while in the prosecution of the master's business, it was not error to refuse to direct a verdict for the defendant.

Appeal from Clay Circuit Court, Western District; *R. H. Dudley,* Judge; affirmed.

*Gordon Frierson,* for appellant.

Davis, the servant, was not acting for or on behalf of the appellant in making the assault upon appellee, but was acting either in what he conceived to be self-defense, or from motives of personal anger toward appellee. In neither case was the appellant liable. *American Ry. Exp. Co.* v. *Mackley,* 148 Ark. 227.

*J. N. Moore,* for appellee.

The assault was committed by the servant of appellant acting in the line of his duty, as testified by him, and appellant is liable therefor. 42 Ark. 553; 58 Ark. 386; 131 S. W. 971; 88 S. W. 582.

WOOD, J.    This is an action by the appellee against the appellant for personal injuries. The appellee alleged in substance that the night operator of the appellant at its station at Knobel, Clay County, Arkansas, acting in the line of his employment, assaulted the appellee with a deadly weapon, to-wit, a pistol; that the appellee was lawfully on the platform of the appellant when the appellant's night operator and acting station agent, without any cause or provocation, struck the appellee with a pistol, inflicting upon him serious personal injuries; that on account of the unlawful, wrongful, wilful, and negligent act of the appellant's agent in thus assaulting the appellee and in using vile epithets and insulting language toward him, he had been actually damaged in the sum of $1,500. He prayed judgment for this sum and also for

punitive damages in the sum of $1,000. The appellant denied all the material allegations of the complaint.

The appellee testified in substance that on November 29, 1920, he was at the depot of appellant at Knobel, Arkansas; that he was watching for appellant's train No. 18 to come in and was near the northwest door of the depot. Davis, appellant's depot agent, came out of the station and passed to appellee's right. Appellee paid no attention to what he was doing—saw that he was at work. Appellee next noticed Davis when he ran up against the appellee. Appellee did nothing and had said nothing to Davis that night. Davis before that had said nothing to him. Davis said to appellee: "What in the hell are you doing here?" and turned around and said, "Get," and struck appellee with a pistol. Davis kept saying, "Get" and held out the pistol. Appellee retreated, and Davis followed him fifteen or twenty feet below the south end of the depot. On the night before the occurrence appellee was at the depot talking to a fellow he knew, and Davis came in with a poker to fix the fire, and turned around to the appellee and said, "Have you any business here, Gregory?" and appellee replied, "Nothing in particular," and Davis stepped to the door and said, "Get out of here." Appellee replied, "What is the idea?" and Davis said, "Get out." Appellee stepped out and said, "Old man, you get off the railroad premises, and I can whip you on less ground than you are standing on." Davis said nothing but shut the door and went back. Appellee did nothing to cause the assault. Appellee occasionally met women who came in on the train. Some of them were nice women. There was other testimony corroborating the testimony of the appellee as to the manner of the assault.

It was shown by the testimony on behalf of the appellee that it was the duty of the station agent to maintain order, prevent trespassing in and around the station house to the best of his ability; that telegraph operators were required to prevent loafing in the office and in waiting rooms, but not to do the policing of platforms. Night

operators are expected to protect the company's property, but are not expected to keep people off of the premises unless they are suspicious characters or chronic loafers. If brought to his attention that a man is a trespasser, it would be within the scope of his authority for the operator to order him off of the premises.

Davis, the station agent, testified that he was the telegrapher for the appellant at Knobel on November 29, 1920. About five minutes after twelve he went out to load baggage on the train. Appellee was standing between the waiting room door and the coach. Witness had to go around him. Witness unloaded the baggage and had to go around the appellee again as he went back to the office. Witness struck the appellee, and appellee struck witness. Witness stated that his mind was on his business, but that he was expecting to be assaulted by the appellee on account of an occurrence the night before, and witness wheeled and struck the appellee with a pistol. The occurrence the night before was in the waiting room, where the appellee was cursing, and witness had ordered him out. Appellee went out cursing. On other occasions appellee had come to the station swearing and talking with indecent women, and, if there were any decent women in there, they would be insulted. This got to be a frequent occurrence. The reason witness ordered appellee off the premises was because complaint was made by the passengers about his conduct.

On cross-examination witness stated that he made up his mind before he went out that he would run the appellee off of the ground if the appellee assaulted him. He put a pistol in his pocket to defend himself. He used it for that purpose. The reason he struck the appellee was because appellee struck him—gave witness a jab of some kind, and witness struck him. Witness did not strike the appellee out of any malice toward him. Witness was asked the following question: "You don't tell the jury you were out there beating him through any malice you had towards him, do you?" Answer, "No, sir." Question: "Were you in the discharge of your duty

when you went out there and asked him to get out of the station house?" Answer: "Yes, sir." Question: "Were you in the discharge of your duty to the company when you went out there and tried to get him off the platform?" Answer: "Yes, sir." Question: "You were just carrying out the duty of your employer, that is what you said?" Answer: "Yes, sir," and also "I had a report from one of those boys that morning about what he said."

The appellant asked the court to instruct the jury to return a verdict in its favor. The court refused to so instruct the jury, to which ruling of the court the appellant duly excepted. The court, on its own motion, instructed the jury in effect as follows: "The question for your determination from the evidence in the case is whether or not at the time of the alleged assault by Davis upon Gregory he was in the line of the discharge of his duty as agent for the defendant company. Should you find from the evidence that he was in the discharge of his duty as agent of the defendant company, the further question as to whether or not the striking of the plaintiff by Davis was in his necessary self-defense and therefore justified; and if you find from a preponderance of the evidence that it was the duty of the agent Davis to keep order and to protect the company's premises from persons trespassing thereon, and to rid the premises of loafers or persons there without business with the company; and if you further find that on the night of the alleged assault the plaintiff was present in or about the depot without any business, and if you further find from the evidence that the assault of the plaintiff by the said Davis was in an effort by him to make the plaintiff leave the premises of the company, and that in doing so he was acting in the discharge of his duty, you will find for the plaintiff."

The court further instructed the jury that if the trouble between the plaintiff and Davis was due to, and on account of, a previous difficulty between them and not on account of or connected with the duties required of

Davis at the time of the assault, then plaintiff cannot recover and you should find for the defendant.

The jury returned a verdict in favor of the appellee in the sum of $200, and from a judgment in that sum in favor of the appellee is this appeal.

The only contention of the appellant is that the court erred in refusing to grant its prayer for a peremptory instruction.    In *American Ry. Express Co.* v. *Mackley,* 148 Ark. 227-232, after citing many cases of this court dealing with the liability of the master for the unauthorized tort of the servant committed during the course of his employment, we said:    "The doctrine of all these cases is that the test of the master's liability is not whether a given act is done during the existence of the servant's employment, but whether it was committed in the prosecution of the master's business."    See also *American Ry. Express Co.* v. *Davis, ante* p. 258.

Under the evidence it was an issue for the jury as to whether or not the assault upon the appellee was committed by the appellant's agent while in the prosecution of appellant's business.    This issue was submitted to the jury under correct declarations of law.    Therefore, there was no error in the ruling of the court in refusing to grant the appellant's prayer for peremptory instruction.

The judgment is affirmed.